# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1464

_____

| | | |
|---|---|---|
| Joetta Drake, as legal guardian for Adrian V. Cotton, an incapacitated person; Minnesota Department of Human Services, | * * * * * | |
| Plaintiffs/Appellants, | * * | |
| v. | * * | |
| Francis D. Koss, M.D., individually and in his official capacity, | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Defendant, | * * | |
| Dennis Johnson, individually and in his official capacity; Jane Lilienthal, individually and in her official capacity, Edward Springman, individually and in his official capacity; Katherine Jones, individually and in her official capacity; Leon Koentopf, individually and in his official capacity; Carol Kirchoff, individually and in her official capacity; County of McLeod, Minnesota; Bonnie E. Case, individually and her official capacity, | * * * * * * * * * * * | |
| Defendants/Appellees. | * | |

_____

Submitted: November 16, 2005
Filed: March 3, 2006

_____

Before WOLLMAN, FAGG, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Joetta Drake, as legal guardian for Adrian Cotton, and the Minnesota Department of Human Services (collectively, Drake) appeal the district court's[1] grant of summary judgment in favor of McLeod County and Bonnie E. Case, Katherine Jones, Carol Kirchoff, Leon Koentopf, Jane Lilienthal, and Edward Springman (collectively, jailers). We affirm.

**I.**

This case arises from the injuries suffered by Adrian Cotton when he attempted suicide while being held at the McLeod County jail. At the time, Case was the jail administrator and the other individual defendants were jailers employed by the county.

On November 13, 2000, police arrested Cotton on a domestic assault charge and brought him to the jail. At that time, Cotton denied any suicidal tendencies or past suicide attempts. On November 15, jailer Koentopf noticed blood on the wall of Cotton's cell. Upon further inspection by Koetopf, Lilienthal, and Jones, it was discovered that Cotton had stabbed himself in the wrist approximately twelve times with a pencil and had written "I Love Adrian" on the cell wall in blood. Cotton later admitted to drinking cleaning solution. The jailers took Cotton to the local hospital, where Cotton confessed suicidal intentions to a doctor. The doctor arranged Cotton's transfer to a state psychiatric hospital in Willmar. Jones filled out a suicide attempt report detailing the incident and placed the report in Cotton's file, with one copy

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

-2-

provided to her supervisor Case. On November 16, 2000, Dr. Francis Koss performed a psychiatric evaluation of Cotton at the Willmar facility and determined that he was not suicidal but simply experiencing anxiety and acting out. Dr. Koss suggested that Cotton "may need close supervision." Cotton was then returned to the jail, where he remained without incident for more than two weeks.

On December 3, 2000, Cotton again stabbed himself in the wrist with a pencil and told jailers that he had consumed cleaning solution. Cotton was treated at the local hospital, where he again told a doctor that he wanted to harm himself. The doctor placed Cotton on a 72-hour hold and referred him again to the Willmar psychiatric facility. In his hold order, the doctor wrote:

> This is [Cotton's] second "cry for help" in 2-3 wks. I feel he needs more than 24 hrs stay at Willmar. Please admit him & do the appropriate work up this time!

Cotton was immediately transported to Willmar. Dr. Koss again examined Cotton and noted in his Discharge Summary that Cotton had denied any suicidal ideation. Dr Koss noted that:

> The patient is clearly adjusting to situation in jail, with some mild, depressed mood and mild anxiety; also see patient attempting to manipulate system by malingering. Attempt to avoid Court in the ability to use phone.

Dr. Koss discharged Cotton on December 4, prescribing Atarax for the anxiety Cotton was exhibiting, and making the following discharge recommendations:

> Patient to be discharged back into incarceration. . . . For safety: would highly recommend no sharps to patient in jail and to make cleaning solution unavailable to incarcerated individual. Would recommend

close monitoring; patient may manipulate system in order to get out of jail in the future, as he has recently demonstrated.

By the time Cotton was transported back to the jail on the evening of December 4, the pharmacy was closed. As a result, the jailers were unable to fill Cotton's Atarax prescription that night. Upon his return, Cotton was placed on lockdown status in a minimum security cell, which denied him access to sharp objects. Jail administrator Case decided 30-minute well-being checks would be sufficient. Jailers Lilienthal, Kirchoff, Koentopf, Jones and Springman followed Case's orders and conducted such checks on Cotton every 30 minutes.

As Springman was attempting to deliver a breakfast tray to Cotton's cell at 6:00 the next morning, Cotton pushed the tray back, spilling its contents. Lilienthal punished Cotton for this incident with a 23-hour extension of lockdown. Cotton was described as appearing agitated throughout this incident, finally burying his head in a pillow. When Springman performed his regular 30-minute check at 9:32 a.m., he observed Cotton sleeping in his bed. During the next 30-minute check, which occurred at approximately 10:00 a.m., Springman saw Cotton hanging by a bed sheet from a ceiling vent in the cell. Cotton was not breathing, and the jailers immediately set to work resuscitating him and then transported him to a nearby hospital. Cotton survived, but suffered serious brain injuries as a result of the suicide attempt.

Drake sued McLeod County, Dr. Koss, and the individual jailers in their individual and official capacities, alleging violations of Cotton's federal civil rights as well as state law negligence. After Drake settled the claims against Dr. Koss, McLeod County and the jailers moved for summary judgment, asserting qualified immunity as to the federal claims and official immunity as to the state law claims. The district court granted summary judgment to McLeod County and the remaining jailers in all respects.

On appeal, Drake has abandoned her federal claims against McLeod County. Drake argues that because genuine issues of fact exist on whether the individual jailers demonstrated deliberate indifference to Cotton's needs, the federal claims against them should have survived summary judgment. Drake also argues that McLeod County and the jailers are not entitled to official immunity on the state law claims.

## II.

We review *de novo* a district court's grant of summary judgment. <u>Aviation Charter, Inc. v. Aviation Research Group/US</u>, 416 F.3d 864, 868 (8th Cir. 2005). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Aviation Charter</u>, 416 F.3d at 868. We view the evidence and the inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmoving party. <u>Id.</u> We review *de novo* the district court's interpretation of Minnesota law. <u>Id.</u>

## A.

We treat allegations that officials failed to prevent jail suicides in violation of federal law as claims for failure to provide adequate medical treatment. <u>Hott v. Hennepin County</u>, 260 F.3d 901, 905 (8th Cir. 2001). Deliberate indifference is the barometer by which such claims are tested. <u>Olson v. Bloomberg</u>, 339 F.3d 730, 735 (8th Cir. 2003). To find a prison official liable for showing deliberate indifference, we require the plaintiff to show that the official actually knew that the inmate faced a substantial risk of serious harm and failed to respond reasonably to abate that risk. <u>Id.</u>; <u>Gregoire v. Class</u>, 236 F.3d 413, 417 (8th Cir. 2000). Deliberate indifference is akin to criminal recklessness and requires something more than mere negligent misconduct. <u>Olson</u>, 339 F.3d at 736.

Even if officials know of a risk of suicide, and a suicide attempt does occur, officials sued in their individual capacity[2] are protected by qualified immunity if they could reasonably believe that their response was not deliberately indifferent to that risk. Gregoire, 236 F.3d at 418. Drake points to three specific decisions by the jailers as proof of deliberate indifference: conducting well-being checks only every 30 minutes, failing to remove bedding and clothing, and failing to fill Cotton's Atarax prescription in a timely manner. We conclude that these decisions were not unreasonable in light of the risks as the jailers understood them at the time. The jailers' view of the risk was shaped by the diagnosis and recommendations of Dr. Koss, who indicated that Cotton was not suicidal but simply manipulative. In light of that diagnosis and those recommendations, the actions by the jailers, even taken in the light most favorable to Drake, did not constitute deliberate indifference.

Drake argues, based on Guglielmoni v. Alexander, 583 F. Supp. 821 (D. Conn. 1984), that reliance by the jailers upon this diagnosis does not preclude a finding of deliberate indifference. We rejected such an argument in Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002). There, a prison official with a nursing background asserted qualified immunity on the grounds that she was relying on doctor's orders in making treatment decisions. We held that the prison officials' adherence to the doctor's order was objectively reasonable, for "[t]he law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision." Id. at 849. Similarly, the law does not require a jailer to second-guess or disregard a psychiatrist's diagnosis or treatment recommendations.

---

[2]The jailers were also sued in their official capacities. We treat a suit of an employee in his or her official capacity as a suit against the employer. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). On appeal, Drake has abandoned the federal claims against McLeod County. Thus, the only federal claims we have before us are those against the jailers in their individual capacities.

**B.**

Officials are entitled to official immunity against state law claims in Minnesota if they are engaged in discretionary acts taken in the course of their official duties. Sletten v. Ramsey County, 675 N.W.2d 291, 299 (Minn. 2004). These discretionary acts are distinguished from mere ministerial duties. Johnson v. Minnesota, 553 N.W.2d 40, 46 (Minn. 1996). A ministerial duty is one that is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." Id. For example, the decision to release a patient on medical parole is a discretionary act, rather than a ministerial one, because it requires each member of the parole board to personally evaluate the data and make a discretionary judgment about the patient. Id.

Drake points to Minn. Rule 2911.5700, which provides that "More frequent observation is required for those inmates of a special need classification who may be harmful to themselves." Drake argues that this rule created a ministerial duty that the jailers perform well-being checks more frequently than they did. However, this rule clearly requires the jail officials to make a discretionary decision whether the inmate is of a special need classification. The rule provides examples of inmates of a special need classification, including "those classified as potentially suicidal, those classified as mentally ill, or those experiencing withdrawal from drugs or alcohol." The rule thus requires the jailers to evaluate the available data and make a discretionary judgment about the inmate's needs. Their decision not to assign such a classification to Cotton is protected by official immunity. Ordinarily, when an official is protected from liability by official immunity, the public employer is also protected by vicarious official liability. Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998). As a result, we conclude that McLeod County is also protected from state law liability for the discretionary acts of its employees.

The judgment is affirmed.

_____