# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2620

_____

| | | |
|---|---|---|
| The Baer Gallery, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Citizen's Scholarship Foundation | * | |
| of America, Inc., now known as | * | |
| Scholarship America, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 17, 2006
Filed: June 16, 2006

_____

Before WOLLMAN, ARNOLD, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Baer Gallery, Inc. (Baer Gallery) sued Citizens' Scholarship Foundation, Inc., now known as Scholarship America, Inc. (Scholarship America) for fraud and breach of contract. The district court[1] granted summary judgment in favor of Scholarship America, and Baer Gallery appeals. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

## I.

Baer Gallery is owned by artist Dean Baer and exists to promote his artwork. Following the September 11, 2001, terrorist attacks against the United States, Baer was inspired to paint a rendering of the U.S. flag (the Image). To ensure that the Image was used for a good cause, Baer and Baer Gallery entered into a contract with Scholarship America (the Agreement) on May 21, 2002. Scholarship America managed the Families of Freedom Scholarship Fund (the Fund), an educational scholarship program benefitting dependents of the terrorist attack victims.

The Agreement provided that Baer Gallery "will guarantee a sponsorship donation to [Scholarship America] and [the Fund] of 100% of the designated funds . . . generated through the sale of [the Image]. This contribution will be designated as a [Scholarship America] Sponsorship and all proceeds will be unrestricted." App. at 459. The Agreement allowed Baer Gallery to use certain trademarks owned by Scholarship America in connection with the Image, but indicated that Baer Gallery "must obtain prior written approval of all materials displaying our trademarks before the materials are shown to the public. [Scholarship America] requires, at a minimum, 72 hours (excluding weekends and holidays) to review and approve the materials." Id. (emphasis in original).

After entering into this contract, Baer Gallery began to make plans to promote the sale of prints of the Image on the first anniversary of the terrorist attacks. On August 18, 2002, Baer Gallery sent a draft press release to Scholarship America for approval. Scholarship America, fearful that Baer Gallery's publicity campaign would conflict with its own public relations goals, did not approve the press release prior to September 11, 2002. As a result, Baer Gallery was unable to promote the Image on the first anniversary of the terrorist attacks as it had hoped.

In September 2002, Scholarship America informed Baer Gallery via email that it had "a corporation interested in using the print." As a result, Scholarship America requested that the parties append an addendum (the Addendum) to the original contract that would assign Baer Gallery's copyright of the Image to Scholarship America. After months of negotiation, the parties agreed to the Addendum in December 2002. The Addendum provided that Scholarship America would receive exclusive rights to the Image in exchange for sponsorship benefits. Scholarship America, in turn, agreed that "where the Image is being used on or in connection with a product or products, it will include in some way, shape, or form information on how to purchase the print." Id. at 73.

At the time the Addendum was finalized, Baer Gallery was unaware of Scholarship America's specific plans for the Image. Unbeknownst to Baer Gallery, Scholarship America had been negotiating with Easy Spirit to use the Image on a hang-tag attached to a promotional Freedom Shoe. The hang-tag referred purchasers to Scholarship America's website "for more information on how you can help and how you can purchase a print of this Image." The funds raised as a result of this promotion with Easy Spirit were used to fund Dollars for Scholars, a different program managed by Scholarship America.

On June 12, 2003, Baer Gallery terminated its relationship with Scholarship America. Baer Gallery then filed this action against Scholarship America in the district court, alleging fraud, breach of contract, unjust enrichment, promissory estoppel, and a breach of the duty of good faith and fair dealing. The district court granted Scholarship America's motion for summary judgment on all claims. On appeal, Baer Gallery argues that genuine questions of material fact exist regarding the fraud and breach of contract allegations.

## II.

We review *de novo* a district court's grant of summary judgment. <u>Drake ex rel Cotton v. Koss</u>, 445 F.3d 1038, 1042 (8th Cir. 2006). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Drake</u>, 445 F.3d at 1042. We view the evidence and the inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmoving party. <u>Id.</u> We review *de novo* the district court's interpretation of Minnesota law. <u>Id.</u>

### A.

Baer Gallery alleges that Scholarship America made three fraudulent representations or omissions: (1) by claiming in an email that there was "a corporation interested in using the print," (2) by failing to disclose the true nature of Easy Spirit's planned use of the Image, and (3) by failing to disclose that all proceeds from the agreement with Easy Spirit would benefit Dollars for Scholars.

To prevail on a claim of fraud by misrepresentation under Minnesota law, Baer Gallery must show: (1) a false representation of a material fact, (2) made with knowledge of the falsity or made without knowing whether the statement was true or false, (3) made with the intention to induce appellants to act in reliance on the statement, (4) that the representation caused Baer Gallery to act in reliance, and (5) pecuniary damage. <u>Am. Computer Trust Leasing v. Boerboom Int'l, Inc.</u>, 967 F.2d 1208, 1212 (8th Cir. 1992). Baer Gallery's reliance on the representation must be reasonable, and reliance on an implied misrepresentation is unreasonable if a written contract provision explicitly states a fact completely contradictory to the claimed misrepresentation. <u>Houlihan v. Offerman & Co.</u>, 31 F.3d 692, 695-96 (8th Cir. 1994).

Baer Gallery claims that the email stating that there was "a corporation interested in using the print" implied that the unnamed corporation would use full-size prints of the Image. Baer Gallery thus argues that the email–specifically, the mention of "the print"–was a false representation that induced Baer Gallery to agree to the Addendum. Even assuming that the email implied that the interested corporation would use full-size prints of the Image, we conclude that the express language of the Addendum precludes Baer Gallery from reasonably relying on such an implication. Under the specific provisions of the Addendum, Scholarship America could modify, adapt, and use the Image in connection with other products, but was not free to sell the Image by itself. For example, paragraph 3 provides that Scholarship America "may, without limitation, reproduce, distribute, publish, display, modify, adapt, create derivative works (works consisting of editorial revisions, elaboration, or other modifications of the Image), or otherwise use or exploit all or part of the Image." App. at 71. In paragraph 16, Baer Gallery agreed "to work with [Scholarship America] on a new print layout, if necessary, to include a corporate sponsor who wishes to use the Image on or in connection with its product." Id. at 72. Finally, paragraph 19 provides that "This Agreement covers use of the Image to promote a product or products, but does not include selling the Image itself. For example, the Image may be used on an enclosure or collateral item distributed with (but not sold separately from) a corporate sponsor's product. . . . Use of the Image for any other purpose other than stated is prohibited under the Agreement." Id. at 73.

In light of this contractual language, we conclude that Baer Gallery could not have reasonably believed that Scholarship America agreed only to sell full-size, high-quality prints. Indeed, paragraph 19 prohibited Scholarship America from selling copies of the Image unless the Image was used as "an enclosure or collateral item distributed with" some other product. Thus, Baer Gallery's fraudulent misrepresentation claim relating to the use of the word "print" must fail.

To establish a claim of fraud by omission, Baer Gallery must show the existence of a duty to disclose. Exeter Bancorporation, Inc. v. Kemper Sec. Group, Inc., 58 F.3d 1306, 1314 (8th Cir. 1995). Such a duty might exist where there is a fiduciary or confidential relationship between the parties, where disclosure is necessary to clarify misleading information already disclosed, or where one party has special knowledge of material facts to which the other party does not have access. Id. If such a duty is shown, concealment is fraudulent if a party conceals a fact material to the transaction and peculiarly within its knowledge, knowing that the other party acts on the presumption that no such fact exists. Id.

Baer Gallery's first allegation of fraudulent omission–the failure to disclose that the Image would be used as a hang-tag on a shoe–fails when examined in light of the language of the Addendum. The Addendum states that Scholarship America has the right to modify or adapt the Image, and to use it as a collateral item used to promote another product. We thus conclude that Scholarship America did not conceal any material fact relating to their future use of the Image.

Baer Gallery also alleges that Scholarship America failed to disclose that the proceeds from the deal with Easy Spirit would benefit Dollars for Scholars, not the Fund. As the district court aptly stated, "[t]his alleged omission does not amount to fraud because it was neither an omission nor material." The Agreement provides that "all proceeds [from the agreement] will be unrestricted." App. at 459. Because Baer Gallery had already agreed that Scholarship America was free to use the proceeds from the Image as it saw fit, Scholarship America was under no legal duty to disclose any specific future funding plans. Thus, Baer Gallery's fraud claims must fail as a matter of law.

**B.**

Baer Gallery alleges three contract breaches by Scholarship America. First, Baer Gallery claims that the Agreement required all proceeds to go to the Fund and that Scholarship America breached the Agreement by using proceeds to fund Dollars for Scholars. Second, Baer Gallery claims that the Agreement required Scholarship America to approve its promotional campaign before September 11, 2002, which Scholarship America did not do. Third, Baer Gallery claims that the hang-tag did not provide enough information to satisfy Scholarship America's duty under the Addendum to provide information on how to purchase the print.

These claims turn on disputes of contract interpretation. The construction and effect of a contract presents a question of law, unless an ambiguity exists. Brookfield Trade Ctrs., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). A contract is ambiguous if its language is reasonably susceptible to more than one interpretation. Id. In interpreting a contract, we are to give the language its plain and ordinary meaning and to attempt to give meaning to all of the contract's provisions. Id.

Baer Gallery's assertion that the Agreement required the proceeds from the Image to benefit only the Fund is without merit. The Agreement states that "all proceeds will be unrestricted." App. at 459. Baer Gallery points to the reference to the Fund in the title of the Agreement and three instances of language within the Agreement that indicate that the Fund is to receive some financial support because of the Agreement. These examples do not contradict the unambiguous provision allowing Scholarship America to determine how the proceeds would be used.

Baer Gallery's claim that the Agreement required Scholarship America to approve its promotional campaign similarly defies the plain language of the Agreement. The Agreement requires Baer Gallery to "obtain prior written approval

-7-

of all materials displaying our trademarks before the materials are shown to the public." Id. Baer Gallery interprets this provision to limit Scholarship America's freedom to withhold or delay approval. The language of the Agreement does not support this interpretation. The clear language of the Agreement gives Scholarship America the discretion to either approve or withhold approval, and Scholarship America did not breach the Agreement when it did not approve the press release prior to September 11, 2002.[2]

Finally, Baer Gallery alleges Scholarship America breached paragraph 19 of the Addendum, which requires that "[i]n all instances, where the Image is being used on or in connection with a product or products, it will include in some way, shape, or form information on how to purchase the print." The hang-tag contained the following language: "Please visit www.scholarshipamerica.org for more information on how you can help and how you can purchase a print of this image." It is undisputed that the Scholarship America website provided interested buyers with a link to a Baer Gallery website at which they could purchase the print. Baer Gallery argues, however, that this was a less than optimal method of directing potential buyers to their website. That may be true, but the contract only requires that the information be provided in "some way, shape, or form." According to the undisputed facts, Scholarship America did not breach the plain language of this contractual provision.

---

[2]Notwithstanding the language granting Scholarship America discretion to withhold or delay approval, Baer Gallery argues that Scholarship America breached the covenant of good faith and fair dealing by placing its interests ahead of Baer Gallery's interests. The exercise of contractually granted discretion violates the implied covenant of good faith and fair dealing only if it is exercised unreasonably. Team Nursing Serv., Inc. v. Evangelical Lutheran Good Samaritan Soc'y, 433 F.3d 637, 641-42 (8th Cir. 2006). We conclude that no such unreasonable exercise occurred here.

The judgment is affirmed.

_____