# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3981

_____

| | |
|---|---|
| Cynthia F. Gordon, as Trustee for the Heirs and Next of Kin of Walter Valentino Gordon, Deceased, | * <br> * <br> * <br> * |
| Plaintiff–Appellee, | * <br> * |
| v. | * <br> * |
| Sheriff James Frank; Deputy William Harrell, | * <br> * <br> * |
| Defendants, | * <br> * |
| Sgt. David Frantsi, | * <br> * |
| Defendant–Appellant, | * Appeal from the United States <br> * District Court for the District of <br> * Minnesota. |
| Sgt. Garrett Kleinendorst, | * <br> * |
| Defendant, | * <br> * |
| Corrections Officer Lois Arends; Corrections Officer Vincent Deschene, | * <br> * <br> * |
| Defendants–Appellants, | * <br> * |
| Corrections Officer John Kuenkel; Allen Clevenger, R.N.; John Doe; Jane Row, (whose true names are unknown), | * <br> * <br> * <br> * <br> * |
| Defendants, | * |

County of Washington,                    *
                                          *
                                          *
          Defendant–Appellant.            *
                                   _____

                         Submitted:  May 19, 2006
                           Filed:  July 21, 2006
                                   _____

Before MURPHY, BEAM, and BENTON, Circuit Judges.
                                   _____

BENTON, Circuit Judge.

        Cynthia F. Gordon sued Washington County, its sheriff and prison staff under both Minnesota tort law and 42 U.S.C. § 1983 for violating her husband's Eighth Amendment right to be free from cruel and unusual punishment.  Sgt. David E. Frantsi, Officers Lois Arends and Vincent Deschene, and Washington County moved for summary judgment based on qualified and official immunity.  The district court[1] denied the motion.  Defendants appeal.[2]  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

        [1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

        [2]In her brief, Gordon objects to the district court's refusal to permit supplementing the record with an affidavit.  A denial of summary judgment may be treated as a final order when based on qualified immunity, but only to decide whether a certain point of law is "clearly established."  *Sanders v. Brundage*, 60 F.3d 484, 486 (8th Cir. 1995), *quoting* *Mitchell v. Forsyth*, 472 U.S. 511, 528-30 (1985).  A motion to supplement the record is not a judgment subject to review under 28 U.S.C. § 1291, or a collateral order under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

I.

Walter V. Gordon, Jr., was arrested and sentenced to 10 days in jail for driving without a license. He was released to a hospital to treat heart problems. After treatment, he did not return to jail. Washington County issued a warrant for Gordon to serve his five remaining days.

A year later, he returned to a hospital complaining of pain. After waiting in the emergency room, Gordon left without receiving treatment but called police for a ride home. Finding a warrant for his arrest, the police turned him over to a county deputy. Gordon told the deputy he had congestive heart failure and pneumonia.

At 5:23 p.m., Gordon arrived at the Washington County jail. He immediately complained of pain and informed prison staff that he had pneumonia, congestive heart failure, high blood pressure and diabetes. He presented his hospital discharge form, including a list of prescribed drugs. The jail nurse examined him. He concluded that Gordon was stable but might have to be rechecked. He placed Gordon on "high observation" for 24 hours and arranged for medications to be administered the next day.

After 11:00 p.m., Gordon was taken to his cell. He requested help climbing the stairs from the officers on duty, Arends and Deschene. He did not receive help, climbing the stairs on his own. Between 11:55 p.m. and 12:00 a.m., Gordon rang the officers' intercom three times. Both officers answered the calls. First, Gordon requested a blood pressure test and complained of other medical issues. Deschene stated he would relay the information. Gordon rang again and requested medication. Arends replied that he had already been seen. Finally, Gordon again requested medication, saying he could not breathe and was in extreme pain. Arends repeated he had been seen, stated they had no orders to provide him with medicine, and explained

he could see medical staff in the morning. She threatened to place him in lockdown if he continued to buzz for non-emergency issues.

Gordon did not buzz again. Arends filed an incident report and notified her supervisor, Sgt. Frantsi, before 12:30 a.m. No immediate action was taken. The officers conducted wellness checks on inmates every 30 minutes throughout the night. During two checks early in the morning, Deschene spoke with Gordon, who said something about medication and trouble breathing. The officers observed Gordon resting on his bunk throughout the night. He changed positions restlessly. At 5:15 a.m., Deschene noticed that Gordon lay partially propped against the wall, blood flowing from his mouth, eyes open, and no sign of breathing. Deschene immediately notified Arends; she called Frantsi, who examined Gordon, finding no pulse. Gordon died of hypertensive and artherosclerotic heart disease.

## II.

Denying summary judgment, the district court rejected claims of qualified immunity and official immunity. A denial of qualified immunity is immediately appealable "to the extent that it turns on an issue of law." ***Powell v. Johnson***, 405 F.3d 652, 654 (8th Cir. 2005), *quoting* ***Mitchell***, 472 U.S. at 530. Here, qualified immunity turns on the legal question whether appellants clearly violated the Eighth Amendment.

This court may reach issues of official immunity under the collateral order doctrine. *See* ***Alternate Fuels, Inc. v. Cabanas***, 435 F.3d 855, 858 (8th Cir. 2006), *citing* ***Mitchell***, 472 U.S. at 525 ("[A] denial of absolute immunity is appealable before final judgment because 'the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.'").

This court reviews de novo a denial of summary judgment based on qualified immunity. **Powell**, 405 F.3d at 654. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. **Fed. R. Civ. P. 56(c)**. This court considers the facts most favorably to the nonmoving party. **Celotex Corp. v. Catrett**, 477 U.S. 317, 324 (1986); **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 255 (1986).

III.

Qualified immunity shields government officials from suit under 42 U.S.C. § 1983 if they acted reasonably and in a manner that did not violate clearly established law. **Anderson v. Creighton**, 483 U.S. 635, 638 (1987). First, the alleged conduct must violate a constitutional right. **Saucier v. Katz**, 533 U.S. 194, 201 (2001). Next, the right violated must be clear "so that a reasonable official would understand that what he is doing violates that right." **Id.** at 202, *citing* **Creighton**, 483 U.S. at 640. "[Q]ualified immunity would be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury. . . .'" **Harlow v. Fitzgerald**, 457 U.S. 800, 815 (1982), *quoting* **Wood v. Strickland**, 420 U.S. 308, 322 (1975).

Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment. **Estelle v. Gamble**, 429 U.S. 97, 106 (1976). To show deliberate indifference, plaintiffs must prove an objectively serious medical need and that prison officers knew of the need but deliberately disregarded it. **Crow v. Montgomery**, 403 F.3d 598, 602 (8th Cir. 2005), *citing* **Farmer v. Brennan**, 511 U.S. 825, 838 (1994); *see also* **Dulany v. Carnahan**, 132 F.3d 1234, 1239 (8th Cir. 1997). The subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health. **Olson**

***v. Bloomberg***, 339 F.3d 730, 736 (8th Cir. 2003), *citing **Gregoire v. Class***, 236 F.3d 413, 419 (8th Cir. 2000). Knowledge of risk may be inferred from the record. ***Gregoire***, 236 F.3d at 417, *citing **Farmer***, 511 U.S. at 842. Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed. ***Plemmons v. Roberts***, 439 F.3d 818, 823 (8th Cir. 2006).

The officers do not challenge Gordon's objective medical need. At issue is whether Sgt. Frantsi, Officer Deschene and Officer Arends knew that Gordon was at a high risk of heart failure and disregarded it. "Particularly when considering such fact specific issues," the facts must be interpreted most favorably to Gordon, the nonmoving party. *See **Johnson v. Blaukat***, No. 05-3866, 2006 WL 1736380, at *4 (8th Cir. June 27, 2006).

Officer Arends knew Gordon's risk was substantial when he spoke with her over the intercom. At roll call before her shift, Arends learned that Gordon had medical issues that placed him on high observation. She also knew he was released a year before for heart problems. During her shift, Gordon refused to climb the stairs to the cell because of his medical condition. She said, "We have nothing that says that you cannot go up the stairs. . . . You will go there." She observed him struggling up the stairs. On his third intercom call, he stated to her that he could not breathe, was in pain, and wanted a blood pressure check. Arends knew that the symptoms Gordon described over the intercom indicated high risk, yet she delayed medical treatment. She threatened to discipline Gordon. She eventually reported Gordon's statements Sgt. Frantsi, but after Gordon's complaints did nothing other than observe him.

Officer Deschene also knew that Gordon was on high observation. Gordon asked him for help up the steps, and Deschene watched him ascend. Deschene spoke to Gordon over the intercom about medication and overheard his conversation with

Arends. Gordon at least once requested medicine from Deschene. He mentioned trouble breathing during Deschene's wellness checks after midnight. Deschene knew that Gordon was complaining of symptoms of heart trouble, but did not initiate medical treatment. In response to Gordon's complaints over the intercom and from his cell, Deschene promised to pass on the information and told him to relax.

Sgt. Frantsi knew that Gordon had medical issues that required extra observation. Officer Arends told him that Gordon had complained over the intercom of breathing trouble and chest pain. Sgt. Frantsi noted the incident but waited for the officers to ask him to initiate medical treatment.

This court has found deliberate disregard when officers ignore an inmate who tells them he has heart disease and is experiencing related symptoms. *See Plemmons*, 439 F.3d at 825. Likewise here, a reasonable officer would consider chest pain and difficulty breathing to be symptoms that require medical attention in anyone who claims to have heart disease. The intentional delay by these officers shows deliberate disregard sufficient to reject qualified immunity.

Qualified immunity still protects officers accused of violating a right if the right is not clearly established. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), *quoting Creighton*, 483 U.S. at 640. "Even if officials know of a risk . . . [they] are protected by qualified immunity if they could reasonably believe that their response was not deliberately indifferent to that risk." *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006).

A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress, especially one who communicates this distress directly to officers. *See Plemmons*, 439 F.3d at 824

(inmate "told the booking officer he was a heart patient, and . . . began experiencing classic heart attack symptoms"); *Olson*, 339 F.3d at 736 (deliberate disregard when "there was direct, first-hand communication from [inmate] to [officer] of [inmate's] intent to commit suicide and the method by which [inmate] intended to carry out his threat"); *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001) (inmate collapsed and stopped breathing). Officers have a strong claim for qualified immunity when inmates do not tell them they are sick or have no obvious physical symptoms. *See Drake*, 445 F.3d at 1042 (no disregard when only a medical report was presented); *Mays v. Rhodes*, 255 F.3d 644, 649 (8th Cir. 2001) (officers saw no "signs of physical difficulty prior to [inmate's] collapse"); *Ruark v. Drury*, 21 F.3d 213, 216 (8th Cir. 1994) (lone observation of "labored" breathing "but not choking" did not create disregard). Given the facts in this case, a reasonable office would know that delaying treatment violated Gordon's constitutional rights.

The officers assert that they reasonably believed Gordon was not at risk because he was able to yell over the intercom. They thought yelling indicated he was not having trouble breathing. Citing *Parks v. Pomeroy*, 387 F.3d 949, 957 (8th Cir. 2004) and *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004), they argue that this court upholds an officer's immunity when he or she makes a mistake.

The *Parks* and *Davis* cases make clear that an officer has immunity for *reasonable* mistakes. *Parks*, 387 F.3d at 957; *Davis*, 375 F.3d at 720. "Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978). An officer "may misunderstand important facts . . . and assess the legality of his conduct based on that misunderstanding." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citations omitted). But an officer's mistake must be objectively reasonable. *Id.* at 565 (majority opinion), *quoting United States v. Leon*, 468 U.S. 897, 923 (1984); *see also id.* at 568 (Kennedy, J., dissenting) ("The question is whether the officer's mistaken belief . . . was a reasonable belief.").

Here, defendants mistook a fact – Gordon could yell and still have trouble breathing. This mistake, though, was unreasonable because they did not act upon the available information. They dismissed his complaints, relying only upon Arends' corrections experience. Yet they knew the nurse's concern and had access to Gordon's medical-screening form indicating he had congestive heart failure and high blood pressure. Arends did not read the screening form until hours after Gordon complained of trouble breathing. Deschene and Frantsi did not read it at all that night. A reasonable officer would do more than dismiss Gordon's complaints given the seriousness of his symptoms and the screening information available. *See Olson*, 339 F.3d at 738 (conduct of an officer may be considered unreasonable even if officer took "some measures in response" to a high medical risk).

The officers also argue they relied on the jail nurse's medical assessment ordering medications in the morning. True, reliance on the recommendations of a trained medical professional can disprove deliberate disregard. *Drake*, 445 F.3d at 1042; *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). Reliance on medical assessment, however, must be "objectively reasonable in light of the legal rules in place at the time of . . . adherence." *Meloy*, 302 F.3d at 849. It is reasonable to rely on medical assessments when an officer is "not responsible for examining or treating [the inmate]." *Id.* It may also be reasonable when the medical assessment does not indicate that the inmate was seriously ill. *Drake*, 445 F.3d at 1042.

In this case, it was unreasonable for Arends, Deschene and Frantsi to ignore Gordon's shortness of breath and chest pain because they were responsible for responding to medical emergencies and knew Gordon was on high observation. A medical assessment does not justify qualified immunity when officers ignore it.

Viewing the facts most favorably to Gordon, the officers knew of Gordon's high risk and disregarded it, violating his Eighth Amendment rights.

IV.

This court reviews de novo a grant of summary judgment based on official immunity, using the same standard as applied by the district court. *Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006). Under Minnesota law, officials are entitled to official immunity unless the plaintiff shows: "1) a ministerial duty is either not performed or performed negligently, or 2) . . . a willful or malicious wrong is committed." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 505 (Minn. 2006), *citing Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 662 (Minn. 2004). First, the conduct under scrutiny must be defined. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006), *citing Anderson*, 678 N.W.2d at 656. Plaintiff alleges the officers failed to follow the Washington County Sheriff's medical emergency policies and procedures that state: " 3. Assessment: When any officer becomes aware of an ill or injured inmate, county employee or citizen, he/she will immediately notify the Correctional Sergeant, who will assess the situation for the appropriate medical response." The conduct under question is the officers' failure to immediately notify Sgt. Frantsi and his subsequent failure to assess the situation.

The nature of these duties determines whether they are ministerial. *See Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998). A ministerial duty is "absolute, certain and imperative, involving the execution of a specific duty arising from fixed and designated facts." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991), *citing Cook v. Trovatten*, 274 N.W. 165, 167 (Minn. 1937). A written policy by itself does not make an act ministerial. *Bailey v. City of St. Paul*, 678 N.W.2d 697, 702 (Minn. Ct. App. 2004). Instead, a written policy indicates a ministerial duty if it creates "a sufficiently narrow standard of conduct" that the employees feel "bound to follow." *Anderson*, 678 N.W.2d at 659.

In the present case, the officers' duties are ministerial. When an inmate is ill, the Washington County Sheriff's policy narrows the standard of an officer's conduct to simple and definite tasks. Officers must notify the sergeant. The sergeant must assess the situation. The policy uses an imperative "will." The policy also uses the word "immediately," which generally indicates a ministerial duty. *Wiederholt*, 581 N.W.2d at 316 ("[The] duty to have the sidewalk immediately repaired was clearly ministerial in nature because it was 'simple and definite,' dictated by the city's own written policy."). Officers are bound by these policies in medical emergencies, since all jail staff must follow them (according to page one). The officers agree that the policy governed their conduct in emergency situations. Deschene specifically stated that this policy was relevant to Gordon that night.

But the defendants failed to follow their ministerial duties as outlined in the sheriff's policy. Arends and Deschene may have notified Frantsi that they had a "disruptive inmate" but not a medical emergency. Sgt. Frantsi stated that he "wait[s] for an officer's assessment to determine whether or not [he] should address an inmate." Frantsi made no attempt to assess Gordon's situation, stating that he "left it up to the officers." Thus, the defendants are not protected by official immunity.

The officers argue that deciding how to treat an inmate and whether to fill a prescription is not ministerial, citing *Drake ex rel. Cotton v. Koss*, 393 F.Supp.2d 756, 766 (D.Minn. 2005), *aff'd*, 445 F.3d 1038. The present policy differs from the policy in *Drake* because it does not require the officers to classify inmates as "special need." There, officers had to "evaluate available data and make a discretionary judgment about the inmate's needs." *Drake*, 445 F.3d at 1043. Here, the policy requires the officers to act "when any officer becomes aware of an ill or injured inmate." The officers were aware of the nurse's evaluation and Gordon's immediate complaints. The policy does not require Arends and Deschene to evaluate Gordon's condition. Frantsi has discretion while making an assessment, but the policy requires that he will make an assessment.

-11-

The officers also contend that Gordon did not appear in dire need of medical care, so there was no duty to respond. This argument, however, addresses a predicate fact immaterial to whether the duty is ministerial. *See Thompson v. City of Minneapolis*, 707 N.W.2d 669, 675 (Minn. 2006).

Since official immunity does not apply to a ministerial duty, an inquiry into malice is not necessary. The conduct of Arends, Duschene and Frantsi is not protected from suit by official immunity.

Because the officers have no official immunity, Washington County has no vicarious official immunity. *Wiederholt*, 581 N.W.2d at 317 ("[B]ecause we hold here that official immunity does not apply to the ministerial nature of the [official's] duty . . . we hold that the city is not entitled to vicarious official immunity.").

V.

The district court's denial of summary judgment is affirmed.

_____