# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1523

_____

B. Thomas and Company, doing business as National Financial Services, LLC

*Plaintiff - Appellant*

v.

Universal Warranty Corp.; Ally Insurance Holdings, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 19, 2020
Filed: July 2, 2021

_____

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

B. Thomas and Company, doing business as National Financial Services, LLC ("National"), sued Universal Warranty Corp. ("Universal") and its parent company, Ally Insurance Holdings, Inc. ("Ally"), for breach of contract and other claims after Universal terminated National's non-exclusive right to represent Universal's vehicle

warranty program. The district court[1] awarded summary judgment to Universal, and dismissed all of National's claims. We affirm.

## I. Background

Universal is the wholly-owned subsidiary of Ally. Universal and Ally marketed vehicle service contracts and guaranteed asset protection ("GAP") contracts to automobile dealers ("Dealers") for resale to their customers. A vehicle service contract protects an automobile owner against mechanical breakdown by paying for covered repairs, while GAP contracts pay the difference between actual cash value and the balance of a lease or loan when a vehicle is destroyed or stolen.

Under contracts entered into between 2003 and 2010, National acted as an independent agent authorized to market these vehicle service and GAP products. Three agreements are relevant to this appeal: (1) the 2003 V1 Rep. Agreement, effective March 26, 2003 ("2003 VehicleOne Rep. Agreement"); (2) the 2003 Universal Warranty Rep. Agreement, effective October 2, 2003 ("2003 Universal Rep. Agreement"); and (3) the 2010 Universal Warranty Rep. Agreement, effective March 24, 2010 ("2010 Universal Rep. Agreement").

The 2003 VehicleOne Rep. Agreement was product-specific, appointing National as sales representative to solicit and service Dealers in Kentucky to sell Universal's VehicleOne service contract program. The 2003 Universal Rep. Agreement was broader in scope, appointing National as sales representative over Universal's vehicle service contracts in "Kentucky, [the] Southern Border of Indiana, Tennessee, [and] West Virginia."

As relevant to this appeal, the 2003 agreements shared substantially similar terms. Both agreements provided that payment of representative fees would be paid

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

"only in respect to those service contracts for which [Universal] has received the Dealer Cost, and provided [National] is currently servicing such Dealer account on behalf of [Universal]." And both agreements let either party terminate the agreements without cause with sixty days' notice. The termination provisions did not discuss fee payments for warranties sold after the agreements terminated.

Before entering the 2003 VehicleOne Rep. Agreement, Universal's regional sales director sent a letter to National about the contract's "Termination section" (the "Continued Commission Letter"). The Continued Commission Letter stated: "Upon termination of this agreement, you may continue to receive commission, net of cancellations, as long as" certain conditions are met. No similar letter preceded the 2003 Universal Rep. Agreement.

Like the 2003 Universal Rep. Agreement, the 2010 Universal Rep. Agreement appointed National as sales representative over Universal's vehicle service contracts, but this time in "North Carolina and Kentucky." Like the 2003 agreements, the 2010 Universal Rep. Agreement provided that Universal would pay representative fees only if National was servicing accounts "on behalf of" Universal. The 2010 agreement differed from the 2003 agreements in its inclusion of a paragraph in the termination section providing that National "shall not be entitled to any Representative Fees on Program sales made by Dealers after the effective date of termination of this Agreement, unless this provision is superseded by any amendment to this Agreement."

When these three agreements were executed, Charles Ballou owned National. In 2011, Ballou sold his ownership interest to Bob Thomas, a former Universal regional manager. Over the next several years, agents of Ally and Universal purportedly made numerous statements suggesting National was a key part of their future long-term business plans and would have access to a new warranty product known as "Ally Premier Protection."

On April 29, 2015, Universal gave National notice of its termination of all agreements, which would take effect on July 1, 2015. The termination letter stated that all representative-fee payments to National would end on the termination date except for those contemplated by the 2003 VehicleOne Rep. Agreement. Universal continued to pay National post-termination representative fees on VehicleOne service contracts sales. Sometime after November 2016, Ally implemented its Ally Premier Protection product. National was not permitted to represent Ally on this product and received no commission on it. In September 2017, Ally discontinued the VehicleOne product.

In March 2018, National sued Universal and Ally, alleging six causes of action: (1) breach of contract; (2) tortious interference; (3) unjust enrichment; (4) breach of the duty of good faith and fair dealing; (5) fraudulent concealment; and (6) negligent misrepresentation. In essence, National claimed it was entitled to continuing representative payments on Dealer sales of Ally Premier Protection warranties.

Universal and Ally moved for summary judgment. The district court granted their motion. On appeal, National challenges all but the dismissal of its tortious interference claim.

## II. Discussion

We review de novo the district court's order granting summary judgment. *See Travelex Ins. Servs., Inc. v. Barty*, 970 F.3d 1066, 1068 (8th Cir. 2020). "Summary judgment is appropriate where a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)).

The parties agree that Nebraska law applies to National's claims. "When deciding . . . state law issue[s] . . . , we are bound in our interpretation of Nebraska law by the decisions of the Nebraska Supreme Court." *Packard v. Darveau*, 759

-4-

F.3d 897, 901 (8th Cir. 2014) (alteration and ellipses in original) (quoting *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*, 118 F.3d 1263, 1267 (8th Cir. 1997)). When the Nebraska Supreme Court has not decided an issue, we must predict its decision and "may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data" to do so. *Id.* (ellipses in original) (quoting same).

## A. Breach of Contract

The district court concluded that Universal and Ally were entitled to summary judgment on National's breach of contract claims. The district court reasoned that when the 2003 Universal Rep. Agreement terminated,[2] National lost its authority to service Dealer accounts for Universal and receive representative fees.

National argues that a genuine issue exists as to whether termination of the 2003 Universal Rep. Agreement automatically ended National's authority to service Dealer accounts for Universal. According to National, the contract is silent on the issue, which means it should go to a jury. Emphasizing its continued post-termination service of Dealer accounts, National says that the parties intended for it to continue to service Dealer accounts and to obtain representative fees for doing so. National also points to the fact it received continued payments for warranties sold under the 2003 VehicleOne Rep. Agreement, which included the same relevant contractual language as the 2003 Universal Rep. Agreement. We reject National's arguments.

Under Nebraska law, a court interpreting contract language "must first determine, as a matter of law, whether the contract is ambiguous." *Bierman v. Benjamin*, 943 N.W.2d 269, 274 (Neb. 2020). Ambiguity exists "when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable

---

[2]The district court analyzed breach claims brought under various contracts between the parties. On appeal, National only challenges the decision as it relates to the 2003 Universal Rep. Agreement.

but conflicting interpretations or meanings." *Id.* "When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them." *Id.* Just because the parties suggest opposing interpretations "does not necessarily compel the conclusion that the instrument is ambiguous." *Id.* If a contract is ambiguous, then "a question of fact" exists and "extrinsic evidence" may be used to help determine the contract's meaning. *Id.*

Like the district court, we do not view the 2003 Universal Rep. Agreement to be ambiguous regarding the effect of the termination on continued payments. Both parties could terminate the agreement upon sixty days' notice under section 16(b). And section 7(b) specifically provided that National's right to continued representative fees ceased, stating "[t]he Representative fee will be paid only in respect to those service contracts for which [Universal] has received the Dealer cost, and provided [National] is *currently servicing* such Dealer account *on behalf of [Universal]*. (emphasis added).

Sixty days after Universal's notice of termination of the 2003 Universal Rep. Agreement, National could no longer service Dealer accounts "on behalf of" Universal. So commissions for sales after termination were not due under the contract's plain terms. To hold otherwise would violate the plain terms of the contract.

We disagree with National's contention that the termination section's silence on the issue of post-termination representative fees means the contract is ambiguous regarding National's right to post-termination fees. Admittedly, the issue may have been more clear-cut if the 2003 Universal Rep. Agreement's termination section directly addressed post-termination fees like the 2010 Universal Rep. Agreement did. But when we read the termination provision together with the representative-fee provision, it is clear that National was not entitled to post-termination fees. While harmonizing these two provisions might make resolution of the issue slightly more complex, it does not make the contract ambiguous. *See Ne. Neb. Pub. Power*

*Dist. v. Neb. Pub. Power Dist.*, 900 N.W.2d 196, 205 (Neb. Ct. App. 2017) (noting that the "unnecessarily complicated" contract language did not make the contract ambiguous because there was only "one reasonable interpretation of the contract"). Read together, the termination provision and the representative-fee provision in the 2003 Universal Rep. Agreement unambiguously ended National's entitlement to post-termination representative fees.

We also reject National's attempt to prove its entitlement to ongoing post-termination representative fees under the 2003 Universal Rep. Agreement via extrinsic evidence—Universal's continued payment of post-termination representative fees under the 2003 VehicleOne Rep. Agreement.[3] Nebraska law bars National from using extrinsic evidence (like the parties' course of dealing) to prove the meaning of an otherwise unambiguous contract. Indeed, the Nebraska Supreme Court has held courts cannot "look to extrinsic evidence, such as the parties' course of dealings" to decide contractual ambiguity exists.[4] *Facilities Cost Mgmt. Grp.,*

---

[3]Universal's continued payments under the 2003 VehicleOne Rep. Agreement may be explained by the Continued Commission Letter that Universal sent to National. The letter clarified that National might continue to receive commissions on the VehicleOne warranty product if certain conditions were met. Because National does not claim a breach of the 2003 VehicleOne Rep. Agreement, we need not determine the legal effect of the Continued Commission Letter.

[4]National urges us to follow cases considering course-of-performance evidence to decide whether a contract is ambiguous. *See Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1044 (8th Cir. 2000) (noting Nebraska case law "conflicts" on the issue of whether a court may consider the parties' conduct in determining whether a contract is ambiguous, "but suggests that a court may do so"); *In re Matter of Dunlop*, No. BK16-41913, 2018 WL 3203382, at *3 (Bankr. D. Neb. May 30, 2018) (unpublished) (citing *Nebraska Public Power District* for this same proposition); *Rasmussen v. Nelson*, No. A-15-146, 2016 WL 1212727, at *5 (Neb. Ct. App. Mar. 29, 2016) (unpublished) (recognizing that evidence of the parties' conduct supported the court's interpretation of the purchase agreement). But the Nebraska Supreme Court has rejected such an approach. *See Facilities Cost Mgmt. Grp., LLC v. Otoe Cnty. Sch. Dist.*, 868 N.W.2d 67, 77 (Neb. 2015). We must follow its instruction, *see Packard*, 759 F.3d at 901, so we cannot use course-of-

*LLC v. Otoe Cnty. Sch. Dist.*, 868 N.W. 2d 67, 77 (Neb. 2015).  The parties' performance under the 2003 VehicleOne Rep. Agreement bears no relevance to their obligations under the 2003 Universal Rep. Agreement's unambiguous terms.  We affirm the district court's grant of summary judgment on National's breach of contract claim.

## B.  Fraudulent Concealment and Negligent Misrepresentation Claims

We next consider National's fraudulent concealment and negligent misrepresentation claims.  The district court awarded Universal and Ally summary judgment on these claims because it concluded National could not reasonably rely on any of the alleged concealments or misstatements.  Specifically, the district court reasoned that it was unreasonable for National to rely on purported statements regarding a long-term partnership or continued access to the Ally Premier Protection product considering that all of the contracts let the parties terminate the agreement without cause.  Further, these contracts all had integration clauses allowing modification only by a written instrument signed by both parties.  Thus, the district court concluded that "[i]n light of the contractual terms known to it, National . . . cannot show reasonable reliance on . . . subsequent statements, even assuming such statements were made as alleged by [National]."

National primarily attacks the district court's rationale in two ways.  First, it faults the district court for relying on *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006), because the case was not applying Nebraska law.  Second, National argues the district court erred because no contractual term contradicts the concealments and misrepresentations made.  Neither argument persuades us to reverse.

---

performance evidence to create ambiguity in a contract where it otherwise does not exist.

First, we do not believe that relying on *Baer Gallery*, which applied Minnesota law, constitutes reversible error because Nebraska also includes reliance as an element for a fraudulent misrepresentation claim. *See Schuelke v. Wilson*, 549 N.W.2d 176, 181 (Neb. 1996) (listing reasonable reliance as the fifth element in a fraudulent misrepresentation claim). "[A] person is justified in relying upon a representation made to him as a positive statement of fact, when an investigation would be required to ascertain its falsity." *Id.* at 182. But "Nebraska law . . . imposes a duty of ordinary prudence." *Id.* The ordinary prudence rule provides that a misrepresentation claim fails if "the means of discovering the truth was in the hands of the party defrauded." *Id.* (quoting *Omaha Nat'l Bank v. Mfrs. Life Ins. Co.*, 332 N.W.2d 196, 202 (Neb. 1983)); *see also Denourie & Yost Homes, LLC v. Frost*, 854 N.W.2d 298, 313 (Neb. 2014) ("[T]he recipient of a representation must exercise ordinary prudence to ascertain its truth when the means of discovering the truth is in his or her hands."); *Lucky 7, LLC v. THT Realty, LLC*, 775 N.W.2d 671, 677 (Neb. 2009) (affirming the application of the ordinary prudence rule to a negligent misrepresentation claim). As the Nebraska Supreme Court explained in *Denourie*, one circumstance when the ordinary prudence rule applies is "when a plaintiff failed to read a legal agreement before signing it and had an opportunity to do so, assuming that the plaintiff's execution of the contract was not induced by fraud." 854 N.W.2d at 314.

The Nebraska Supreme Court has affirmed the dismissal of a misrepresentation claim when the ordinary prudence rule prevented a plaintiff from satisfying the reliance element. *See Abboud v. Michals*, 491 N.W.2d 34, 42 (Neb. 1992) (affirming summary judgment on a fraudulent misrepresentation claim because plaintiffs could not have reasonably relied upon representations that were contrary to Nebraska statute and a real estate listing agreement between the parties); *cf. Schuelke*, 549 N.W.2d at 182–83 (reversing judgment for plaintiffs on a recission of contract claim after a bench trial because the circumstances showed that a franchise buyer did not act in an ordinary and prudent manner when it relied on the seller's representations).

Here, the terms of the contracts created non-exclusive, limited grants of authority to National, as an independent contractor, that could be terminated at will by either party with sixty days' notice. National knew these contracts governed at the time it heard the alleged statements. Thus, to the extent the alleged statements contradicted these terms, National could not reasonably rely on them under Nebraska law. But even if reasonable reliance could be shown, National has failed to point to evidence that agents of Universal or Ally affirmatively misrepresented the nature of the relationship so as to create a factual issue for the jury to decide. We therefore affirm the district court's grant of summary judgment on National's fraudulent concealment and negligent misrepresentation claims.

## C. Other Claims

National's two remaining challenges on appeal—claims for unjust enrichment and breach of duty of good faith and fair dealing—both depend on its assertion that the district court misinterpreted the effect of termination of the 2003 Universal Rep. Agreement. Because we agree with the district court's interpretation that the 2003 Universal Rep. Agreement unambiguously provides that representative fees would cease if the agreement was terminated, National cannot prevail on either theory.

The Nebraska Supreme Court has "held that there cannot be an express and an implied contract for the same thing existing at the same time." *Siebler Heating & Air Conditioning, Inc. v. Jenson*, 326 N.W.2d 182, 184 (Neb. 1982). National's unjust enrichment claim therefore fails as a matter of law because the 2003 Universal Rep. Agreement expressly provided that National could not represent Universal and Ally after termination.

Similarly, National's breach of the duty of good faith and fair dealing claim fails as a matter of law. "The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract." *RSUI Indem. Co. v. Bacon,* 810 N.W.2d 666, 674–75 (Neb. 2011). A court may

conclude that a party did not violate an implied covenant of good faith and fair dealing if the contractual parties knew the purported violator might act as it did. *Id.* Further, "[t]he scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Coffey v. Planet Group, Inc.*, 845 N.W.2d 255, 263 (Neb. 2014). Consequently, conduct consistent with a contract's terms cannot violate the duty of good faith and fair dealing. *See id.* at 264 (affirming the district court's conclusion there was no breach of the duty of good faith and fair dealing because the challenged conduct was expressly permitted by the contract and there was no public policy violation).

The only basis National has advanced on appeal for its breach of good faith and fair dealing claim is that, post-termination, Universal interfered with National's ability to service Dealer accounts by restricting access to essential information about those accounts. National's argument is not meritorious. We agree with the district court that "the plain language of the contracts granted National . . . authority to solicit and service Universal . . . products, but that authority to act *on behalf of Universal* . . . ended with the contracts. Therefore, National['s] access to [D]ealer information ended at the same time." National cannot prevail on a breach of good faith and fair dealing claim based on conduct that was consistent with the contracts between the parties.

The district court correctly granted summary judgment to Universal and Ally on National's unjust enrichment and breach of good faith and fair dealing claims.

### III. Conclusion

We affirm the district court's summary judgment dismissal of National's claims.

_____