United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2774

_____

Diana Piantanida,                    *
                                     *
          Appellant,                 *
                                     *
     v.                              *
                                     *
Wyman Center, Inc., also known as    *
Kiwanis Camp Wyman,                  *
                                     *
          Appellee.                  *

_____

No. 96-2987                          Appeals from the United States
                                     District Court for the
_____                          Eastern District of Missouri.

Diana Piantanida,                    *
                                     *
          Appellant,                 *
                                     *
     v.                              *
                                     *
Wyman Center, Inc., also known as    *
Kiwanis Camp Wyman,                  *
                                     *
          Appellee.                  *

_____

Submitted: April 18, 1997
Filed:   June 23, 1997

_____

Before LOKEN, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MAGILL, Circuit Judge.

The Wyman Center, Inc. (Wyman Center) demoted its employee Diana Piantanida while she was on maternity leave, allegedly because she had failed to perform her professional duties in a timely manner prior to going on leave. Piantanida brought this employment discrimination action based on the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (1988 & Supp. IV 1992) (PDA), and the Missouri Human Rights Act, Rev. Mo. Stat. §§. 213.010-213.137, alleging that she had been demoted, and thereby constructively discharged, because she was a "new mom." The district court[1] granted summary judgment against Piantanida, holding that Piantanida's claim for discrimination based on her status as a new parent fell outside the parameters of the PDA. We affirm.

**I.**

On June 15, 1992, Piantanida began working for the Wyman Center, an organization dependent on charitable donations, as an executive assistant. One of Piantanida's key duties was to send form letters to donors acknowledging their gifts to the Wyman Center. At the end of an initial probationary period of her employment, Piantanida's direct supervisor gave Piantanida a favorable evaluation, but noted concerns

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

-2-

with Piantanida's ability to meet deadlines and to stay current with day-to-day projects.  <u>See</u> Appellant's App. at 275 (evaluation dated Sept. 15, 1992).  Piantanida took maternity leave from her position on March 22, 1993.

During Piantanida's maternity leave, the Wyman Center allegedly discovered that Piantanida had failed to send acknowledgment letters to donors for 83 gifts. On April 20, 1993, the Wyman Center notified Piantanida that she would be given a different position when she returned from her maternity leave because of her apparent inability to complete the acknowledgment letters in a timely manner. The new position had fewer responsibilities and a salary of about half of the old position.

Piantanida has agreed that her demotion was not based on her pregnancy or her maternity leave. See Dep. of Diana Piantanida at 137-40, reprinted in Appellant's App.

at 204.[2]  Piantanida, however, claims that, when she spoke

---

[2]The following testimony was presented by Piantanida at her deposition:

Question (by defense counsel):  So it would be fair to say the sole reason you think that your demotion was caused by--well, you tell me what it is you think that the change in the job structure with you was related to your maternity leave?

Answer (by Piantanida):  I was told by Dave Hilliard that he told Lorrie Goecker to create a position for a new mom to handle.

Q.    Okay.  Was there any--was there anything else?

A.    This new position being created is the main reason, because there's no justification that this position should be made, other than now I have a new baby and I wouldn't be capable of doing the job.

Q.    So this was related not to your pregnancy, not to your maternity, but being a new mother?

A.    Correct.

. . .

Q.    So is it fair to say that the sole comment that you're relying upon is the comment that you allege Mr. Hilliard said, that this would be a good job for a new mom?

A.    Correct.

Q.    Was there anything else at Wyman that you think was responsible for moving you into this new job?

A.    No.

with the Wyman Center

---

Dep. of Diana Piantanida at 138-39 (emphasis added), <u>reprinted in</u> Appellant's App. at 204.

about the new position, the Wyman Center's Executive Director, David Hilliard, told her that she was being given a position "for a new mom to handle." Id. at 138, reprinted in Appellant's App. at 204. Piantanida declined to accept the new position because of its low pay. The person who replaced Piantanida received as much as Piantanida received in her original position; i.e., almost twice as much as Piantanida was offered for the new position.

Piantanida brought this Title VII action against the Wyman Center, alleging pregnancy discrimination. The district court granted summary judgment to the Wyman Center, and ordered Piantanida to pay $1743.46 in costs. The court held that discrimination based on one's status as a new parent is not prohibited by the PDA, and that Piantanida had therefore failed to state a claim. See Mem. (June 4, 1996) at 21, reprinted in Appellant's Add. at 22. The court also reached the alternative holding that summary judgment was proper even if this status is protected by the PDA. See id. ("Assuming arguendo that the plaintiff's claim of discrimination as a 'new mother' comes within the purview of the PDA, . . . plaintiff fails to produce sufficient evidence showing a material issue of fact exists on whether the defendant treated the plaintiff

less favorably than others because of her pregnancy, childbirth, and/or related medical conditions."). Piantanida now appeals.

## II.

This Court reviews a grant of summary judgment de novo, taking all of the facts and inferences from the facts in the light most favorable to the nonmovant. See Zakrzewski v. Fox, 87 F.3d 1011, 1012 (8th Cir. 1996). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

Title VII was amended to prohibit discrimination based on pregnancy after the Supreme Court in General Electric Co. v. Gilbert, 429 U.S. 125, 145-46 (1976), held that pregnancy discrimination was not based on gender. The amended statute provides that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise. . . .

42 U.S.C. § 2000e(k) (emphasis added).

Piantanida has agreed that her dismissal was not directly related to either her pregnancy itself or her decision to take maternity leave. We are thus faced with the narrow question of whether being discriminated against because of one's status as a

new parent is "because of or on the basis of pregnancy, childbirth, or related medical conditions," id., and therefore violative of the PDA.

In examining the terms of the PDA, we conclude that an individual's choice to care for a child is not a "medical condition" related to childbirth or pregnancy. Rather, it is a social role chosen by all new parents who make the decision to raise a child. While the class of new parents of course includes women who give birth to children, it also includes women who become mothers through adoption rather than childbirth and men who become fathers through either adoption or biology. An employer's discrimination against an employee who has accepted this parental role--reprehensible as this discrimination might be--is therefore not based on the gender-specific biological functions of pregnancy and child-bearing, but rather is based on a gender-neutral status potentially possessible by all employees, including men and women who will never be pregnant. Cf. Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 679-80 (8th Cir. 1996) (holding that an employer's denial of fertility treatments under insurance benefits is not a violation of PDA, and noting that "[p]otential pregnancy, unlike infertility, is a medical condition that is sex-related because only women can become pregnant. In this case . . . the policy of denying insurance benefits for treatment of fertility problems applies to both female and male workers and thus is gender-neutral"); Troupe v. May Dep't Stores Co., 20 F.3d 734, 738 (7th Cir. 1994) (holding that PDA plaintiff's complaint, that she was terminated because her employer did not believe that she would return from her maternity leave, was not a

-10-

violation of Title VII, and noting that a male employee on medical leave could also be terminated due to employer's fear that he would not return).

Piantanida's claim of discrimination based on her status as a new parent is not cognizable under the PDA. Cf. Piraino v. International Orientation Resources Inc., 84 F.3d 270, 274 (7th Cir. 1996) (holding that a plaintiff successfully alleged pregnancy discrimination, and stating that "[t]his is therefore not a case in which the claim relates only to an employer's refusal to hire (or reinstate) a mother with a young child, without

a hint of any role that the earlier pregnancy played in the decision" (emphasis added)). Piantanida has therefore failed to state a claim for relief under Title VII. Accordingly, we affirm the district court's grant of summary judgment against her. See Troupe, 20 F.3d at 738 (noting that plaintiff "has made no effort to show that if all the pertinent facts were as they are except for the fact of her pregnancy, she would not have been fired. So in the end she has no evidence from which a rational trier of fact could infer that she was a victim of pregnancy discrimination").[3]

## III.

Piantanida also appeals the district court's assessment of costs against her. Piantanida's argument that the district court erred in its assessment of costs is premised entirely on her argument that the district court erred in its grant of summary judgment. See Reply Br. at 26 ("With respect to the order taxing costs, plaintiff has no substantive objections to raise. Plaintiff merely seeks to have the order vacated should the Court reverse the district court's grant of summary judgment in this case."). Because we conclude that the district court did not err in granting summary judgment against Piantanida, we also affirm its assessment of costs against her.

---

[3]Because we affirm the district court's grant of summary judgment on the basis that Piantanida has failed to state a cognizable claim under Title VII and the PDA, we do not consider the district court's alternative grant of summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.