# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3996

_____

Colleen C. Quick,      *
       *
          Appellant,     *
       * Appeal from the United States
      v.     * District Court for the
       * Western District of Missouri.
Wal-Mart Stores, Inc.,     *
       *
          Appellee.     *

_____

Submitted: December 15, 2005
Filed: March 24, 2006

_____

Before WOLLMAN, LAY, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Colleen Quick appeals from the district court's[1] grant of summary judgment to Wal-Mart Stores, Inc. (Wal-Mart) on her pregnancy-based employment discrimination claim. Quick alleges violations of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010-213.095. We affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Quick worked at the Cameron, Missouri, Wal-Mart from 1993 until she was terminated on August 7, 2000. In September 1995, Quick began working in Wal-Mart's photo lab, which was managed by Mary Stewart. When Stewart left her position in 1996, Wal-Mart promoted Quick to photo lab manager. Quick's duties included supervising the associates in the photo division and instructing them as to Wal-Mart's policies.

The Wal-Mart photo lab operates under its own management hierarchy. The photo lab manager reports directly to the district manager for the photo division rather than to the store manager. In 1999, Debra Hoover became the district manager of the photo division and Quick's direct supervisor. David Smart was the store manager at the Cameron, Missouri, Wal-Mart from 1998 until Quick's termination.

To increase business at the Cameron Wal-Mart, Stewart offered certain organizations and individuals two-for-one pricing on film development. Stewart maintained a list of eligible customers in a notebook in the photo lab. As photo lab manager, Quick continued this practice and added two high schools to the list of participants.

In January 2000, Wal-Mart advised its employees in the photo lab division that the district manager for the photo division must approve the use of the "second set free promotion." J.A. at 473-74. With this policy, Wal-Mart intended to eliminate the photo lab manager's discretion to unilaterally implement promotions or discounts. Quick stated in her affidavit, "Wal-Mart management announced that the club cards, key chains, and two-for-one promotions would be discontinued. I understood the policy to mean that with approval, I could continue offering two-for-one photos." J.A. at 316. Quick never asked Hoover for permission to continue the discount.

In February 2000, a photo lab associate met with Hoover to complain about Quick's work habits. Around the time of the complaint, Hoover and Smart met with

Quick to discuss associate complaints, photo lab issues, and Quick's vacation and maternity leave. During that meeting, Hoover and Smart told Quick that it was not "good management sense" to take twelve weeks of maternity leave. J.A. at 86. They also criticized Quick for planning to take vacation time in March and April of 2000.

Quick took a twelve-week leave of absence for the birth of her child beginning on May 12, 2000. Two weeks before Quick's planned return from maternity leave, Hoover met with Quick and told her that she did not expect Quick to return. Hoover also asked whether Quick had made child care arrangements. Quick assured Hoover that she would return to work as scheduled and that she had already arranged for day care. Sometime after this meeting, Hoover met with the associates in the photo lab to discuss helping Quick transition from leave back to her management position.

Teresa Delano, a photo lab manager from the Excelsior Springs Wal-Mart, served as interim photo lab manager from about July 7, 2000, until Quick returned to work. Shortly after Delano started working at the Cameron Wal-Mart photo lab, a customer asked for the two-for-one discount on film development. Delano knew that Wal-Mart eliminated special pricing in the photo lab and refused to give the discount. In response to the customer's persistence, Delano asked a photo lab associate about the discount and learned that Quick maintained a two-for-one discount for certain customers. Delano reported this information to Hoover and gave Hoover the notebook containing the list of eligible customers. Prior to Delano's report, neither Smart nor Hoover knew that Quick was offering this discount.

Hoover investigated Quick's practice of special discounts. Several associates in the photo lab division confirmed that Quick instructed them to offer discounts to the customers listed in the notebook. Hoover asked Scott Matchell, the district loss prevention supervisor, to interview Quick. Matchell interviewed Quick when she returned from maternity leave on August 7, 2000. Matchell recommended that Quick

be terminated because she admitted violating Wal-Mart policy and because her conduct amounted to a theft of services and implicated her integrity.

Hoover contacted Barbara Kulwicki, regional personnel manager for the Wal-Mart photo division. Pursuant to company policy, the regional personnel manager must approve a district manager's decision to terminate management employees. Hoover explained that Quick admitted to intentionally violating Wal-Mart's policies. Kulwicki directed Hoover to terminate Quick. At a second meeting on August 7, 2000, Smart terminated Quick for gross misconduct.

We review *de novo* the district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005). Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Zhuang, 414 F.3d at 854.

Quick contends that the district court erred in granting summary judgment on her pregnancy discrimination claim against Wal-Mart because she presented direct evidence of unlawful discrimination. Specifically, she argues that the criticism she received for taking twelve weeks of maternity leave and Hoover's statement that she did not expect Quick to return from maternity leave constituted direct evidence of discrimination. We disagree. "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (internal quotations omitted). Direct evidence of employment discrimination must be distinguished from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process. Clearwater v. Indep. Sch. Dist. No. 166, 231 F.3d 1122, 1126 (8th Cir. 2000). When Hoover and Smart told Quick that it was a bad

-4-

management decision to take twelve weeks of leave, it was in the context of a broader management meeting addressing a myriad of associate complaints and photo lab issues. Further, this meeting was held five months before Quick was terminated. Even when coupled with Hoover's later statement that she was surprised that Quick would be returning from work, these statements are not sufficiently related to Quick's termination to constitute direct evidence of discriminatory motive. Because she has failed to establish a causal link between management's statements and her termination, we conclude that Quick has not presented direct evidence of pregnancy discrimination.

Quick has also failed to establish indirect evidence of unlawful pregnancy discrimination. To survive summary judgment under the burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff must establish a prima facie case of employment discrimination. Id. at 802. If established, the employer may advance a legitimate, nondiscriminatory reason for the employee's discharge. Id. The burden of production then returns to the plaintiff to show that the employer's reason is a pretext for pregnancy discrimination. Id. at 804.

Assuming that Quick presented a prima facie case under McDonnell Douglas, we must consider whether Wal-Mart presented a legitimate, nondiscriminatory reason for Quick's termination. Wal-Mart asserts that Quick was terminated for knowingly violating company policy by offering two-for-one discounts to certain customers for film development. In her affidavit, Quick acknowledged that the use of two-for-one discounts had been discontinued in January 2000 and that she interpreted the policy to mean that, with management's approval, she could continue giving the discount. The parties agree that Quick never sought express permission from Hoover or any other manager after Wal-Mart announced that it was discontinuing certain photo lab promotions. Accordingly, we conclude that Wal-Mart presented a legitimate, nondiscriminatory reason for Quick's termination.

This case, then, turns on whether Quick presented a trial-worthy claim of pretext. We conclude that she did not. At first glance, the timing of Wal-Mart's decision to terminate seems suspicious, but "we have been hesitant to find pretext or discrimination on temporal proximity alone." Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1114 (8th Cir. 2001). Quick was terminated the day she returned from maternity leave, but that termination followed Wal-Mart's discovery and investigation of the two-for-one discount, Hoover's consultations with Kulwicki and Matchell, and management's two meetings with Quick. Even considering the temporal proximity in conjunction with management's comments addressed above and Quick's allegation that Wal-Mart conducted an insufficient investigation and offered inconsistent explanations for her termination, the evidence Quick presented did not sufficiently undermine Wal-Mart's justification to create a material question of fact as to pretext. Accordingly, we conclude that the district court's entry of summary judgment was appropriate.

The judgment is affirmed.

LAY, Circuit Judge, dissenting.

I dissent. Once again, our court is faced with an employment discrimination case where there are facts in dispute. Rather than submitting this conflict to a jury, the majority decides the facts as a matter of law. In my opinion, this is a violation of the Plaintiff's rights and the question of credibility should be submitted to a jury. I therefore dissent.

_____