Mahala NEESSEN, Plaintiff,

v.

ARONA CORPORATION, Defendant.

No. 09–CV–2010–LRR.

United States District Court, N.D. Iowa, Eastern Division.

April 30, 2010.

844

Bradley M. Strouse, Mark W. Fransdal, Redfern, Mason, Larsen & Moore, PLC, Cedar Falls, IA, for Plaintiff.

Jill Renee Jensen–Welch, Dickinson, MacKaman, Tyler & Hagen, PC, Des Moines, IA, for Defendant.

## ORDER

LINDA R. READE, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ..................................................... 844

II. RELEVANT PROCEDURAL BACKGROUND ............................... 844

III. SUBJECT MATTER JURISDICTION ...................................... 845

IV. STANDARD OF REVIEW ............................................ 845

V. FACTS ......................................................... 846
 A. Players ..................................................... 846
 B. Plaintiff's Employment History .................................. 846
 C. CG Rentals Plans for Plaintiff's Pregnancy Leave .................... 846
 D. Plaintiff Gives Birth .......................................... 846
 E. Staffing & Hiring at the Waterloo Store Prior to the Sale ............... 847
 1. Employees at CG Rentals' Waterloo store ...................... 847
 2. Arona employees work at the Waterloo store .................... 847
 3. Staffing decisions ........................................ 847
 F. Plaintiff Tries to Return to Work ................................ 848
 G. Administrative Proceedings .................................... 849

VI. ANALYSIS ...................................................... 849
 A. Pregnancy Discrimination: Legal Framework ....................... 849
 B. Prima Facie Case ............................................ 850
 1. Protected class .......................................... 850
 2. Availability of CSR position ................................ 851
 3. Inference of discrimination ................................ 853
 4. Summary ............................................... 854
 C. Legitimate, Non–Discriminatory Reason to Not Hire Plaintiff ......... 854
 D. Pretext ..................................................... 855
 E. Exhaustion .................................................. 857

VII. CONCLUSION ................................................... 858

## I. INTRODUCTION

The matter before the court is the Motion for Summary Judgment ("Motion") (docket no. 16), filed by Defendant Arona Corporation ("Arona").

## II. RELEVANT PROCEDURAL BACKGROUND

On December 16, 2008, Plaintiff Mahala Neessen filed a Petition at Law ("Complaint") (docket no. 4) in the Iowa District Court for Black Hawk County, case no.

LACV 107643. Plaintiff alleged that Arona and CG Rentals, LLC ("CG Rentals") violated her rights under the Pregnancy Discrimination Act of 1978 ("PDA"), and the Iowa Civil Rights Act ("ICRA"). On February 23, 2009, Arona removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446. On April 20, 2009, Arona filed an Answer (docket no. 10) in which it denied the substance of the Complaint. On January 19, 2010, Plaintiff and CG Rentals filed a Stipulation for Dismissal with Prejudice (docket no. 15) with respect to Plaintiff's claims against CG Rentals.

On February 16, 2010, Arona filed the Motion. On March 12, 2010, Plaintiff filed a Resistance (docket no. 17). On March 22, 2010, Arona filed a Reply (docket no. 18). That same date, Arona filed an Amended Reply (docket no. 19) to add an attorney's signature to the Reply.

The parties did not request oral argument on the Motion. The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has federal question subject matter jurisdiction over Plaintiff's PDA claim. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States[.]"). The court shall exercise supplemental jurisdiction over Plaintiff's ICRA claim because it is so related to the claim over which the court has federal question jurisdiction that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]").

## IV. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir.2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir.2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir.2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir.2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir.2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving

party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *see, e.g., Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. " 'Evidence, not contentions, avoids summary judgment.' " *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir.2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir.2003)).

### V. FACTS

Viewed in the light most favorable to the non-moving party, Plaintiff, the facts are:

#### A. Players

Plaintiff is a resident of Waterloo, Iowa. CG Rentals is an Iowa limited liability company. From 2004 until January 31, 2008, CG Rentals owned and operated a rental store in Waterloo. Arona is an Iowa corporation doing business in Iowa. On February 1, 2008, Arona purchased CG Rentals' assets at its Waterloo and Dubuque, Iowa stores pursuant to an asset sale and purchase agreement ("Sale").

#### B. Plaintiff's Employment History

From January 14, 2006 until January 31, 2008, Plaintiff worked for CG Rentals at its Waterloo store. Initially, CG Rentals hired Plaintiff to work in an entry-level position. However, shortly after she began working, CG Rentals promoted Plaintiff to work as a customer service representative ("CSR"). On February 1, 2008, Arona and CG Rentals completed the Sale.

On that date, Arona took ownership of the assets in the Waterloo store. Arona never hired Plaintiff. Thus, Plaintiff was never an employee of Arona—only CG Rentals.

#### C. CG Rentals Plans for Plaintiff's Pregnancy Leave

In November of 2007, several months prior to the Sale, Plaintiff spoke to Cindy Clark, an employee of CG Rentals, about Plaintiff's upcoming pregnancy leave. More specifically, Plaintiff and Clark discussed the Waterloo store's need to hire another employee in light of Plaintiff's upcoming pregnancy leave.

In December of 2007, CG Rentals hired Evangelina Gudino to work as a CSR. Gudino spoke Spanish, and Plaintiff admits that CG Rentals' Waterloo location needed a Spanish-speaking CSR to work with its Spanish-speaking customers. Plaintiff testified that Gudino "caught on very quickly and was performing well" in December of 2007. Arona's Statement of Material Facts (docket no. 16–3), at ¶ 27. Michael Porter, the manager of the Waterloo store, said that Gudino would be "just a temporary hire, or she would continue to stay on as a part time person to help out." Plaintiff's Statement of Material Facts (docket no. 17–3), at ¶ 8.

#### D. Plaintiff Gives Birth

Plaintiff's last day of work prior to her pregnancy leave was December 31, 2008. On January 1, 2008, Plaintiff gave birth to a girl. The next day, Plaintiff telephoned Porter and informed him that she would drop by the office to discuss her return to work. Plaintiff had previously informed Porter that she planned to return to work after her pregnancy leave. On January 9, 2008, Plaintiff informed Porter that she would be on pregnancy leave until February 18, 2008. However, as set forth in more detail below, shortly before the Sale, Plaintiff informed Arona's managers that

she would be able to begin work before February 18, 2008.

### E. Staffing & Hiring at the Waterloo Store Prior to the Sale

In January of 2008, CG Rentals and Arona were negotiating and planning the Sale. At this time, Plaintiff was on pregnancy leave and the Waterloo store encountered a number of staffing and hiring issues. The terms of the Sale "imposed no obligation upon Arona to hire the former GC Rentals employees" and provided that Arona "*may* offer employment to [CG Rentals's] employees [ . . . ] subject to Arona's current hiring requirements." Arona's Statement of Material Facts at ¶ 9 (emphasis added).

#### 1. Employees at CG Rentals' Waterloo store

At some point in January of 2008, CG Rentals faxed a copy of its payroll sheet to Arona's Chief Operating Officer, Mark Connelly. The payroll sheet listed CG Rentals' current employees at its Waterloo store. The payroll sheet indicated that CG Rentals' Waterloo store employed the following employees: (1) Porter, general manager; (2) Sunshine Glubka, sales manager; (3) Gudino, CSR; (4) Terrence G. Ehlert, customer accounts manager; (5) Danielle Krumm, manager trainee; (6) Jim Swenson, head product technician; (7) Brad Jensen, product technician; and (8) Joshua Klemke, part-time product technician. Plaintiff's name did not appear on the payroll sheet. CG Rentals did not provide Arona with another list of employees from its Waterloo store.

#### 2. Arona employees work at Waterloo store

In January of 2008, Bob Clark, one of CG Rentals' employees, sought additional staffing from Arona because CG Rentals' Waterloo store was short-handed. Arona agreed to provide CG Rentals with Arona staff in advance of the Sale. On January 23, 2008, Arona sent Bryan Jones, one of Arona's regional managers, to assist CG Rentals in Waterloo. Jones recalls that he merely "help[ed] out" CG Rentals because it was shortstaffed.[1]

#### 3. Staffing decisions

Connelly and Jones were responsible for hiring decisions at the Waterloo store. More specifically, Connelly was responsible for making sure that the staffing level was correct, and Jones was responsible for deciding who to hire off of the list CG Rentals faxed to Connelly. Jones testified that he decided to hire Gudino to work as a CSR at the Waterloo store because Gudino was the only CSR on the list CG Rentals faxed to Connelly. Although CG Rentals employed two CSRs from December of 2007 until the Sale, Arona's guidelines recommended only one full-time CSR. "In the last one or two weeks before the [Sale], and after receiving the list of employees from [CG Rentals]," Connelly and Jones "determined which employees of [CG Rentals] it would employ." Arona App'x I (docket no. 16–4), at 98. Jones decided to hire Gudino to work for Arona at the Waterloo store after the Sale; however, the approximate date that Jones made this decision is unclear. At the time Jones hired Gudino, he knew that she was "a woman in her child-bearing years with at

---

1. Plaintiff argues that Jones's and Schuelka's presence at the Waterloo store prior to the Sale establishes that Arona had control over the Waterloo store prior to the Sale. However, in support of this argument, Plaintiff cites Ehlert's recollection that Jones and Schuelka worked at the Waterloo store prior to the Sale in order to prepare to take over operations—not to take immediate control over the Waterloo store prior to the Sale. In any event, it is unclear how this fact is relevant to the parties' arguments.

least one child, that she was Hispanic, that she spoke Spanish, and that she had a physical disability that was later diagnosed as lupus." Arona's Statement of Material Facts at ¶ 24. While he was at the Waterloo store prior to the Sale, Jones observed Gudino for several days and was satisfied with her performance.

### F. Plaintiff Tries to Return to Work

On Friday, January 28, 2008, Plaintiff visited the Waterloo store and spoke to Jones and Schuelka. Plaintiff wanted to confer with Arona management to determine when she was expected to begin work after her pregnancy leave. Arona takes inconsistent positions with respect to when it learned about Plaintiff. Connelly testified that he learned about Plaintiff and the fact that she was on pregnancy leave in "mid-January." Arona App'x II (docket no. 19–3), at 143. However, Arona admits that, when Plaintiff visited the Waterloo store on January 28, 2008, Jones told her that Arona management had just learned about her the previous Friday; that is, on January 25, 2008. Jones takes an additional inconsistent position: he claims that he was "totally unaware of her [ . . . ] until she came in" to the Waterloo store on January 28, 2008. Arona App'x I (docket no. 16–4), at 53.

While Plaintiff was at the Waterloo store on January 28, 2008, Jones and Schuelka informed her that Arona did not plan to "clean out the existing employees." Plaintiff's Statement of Materials Facts (docket no. 17–3), at ¶ 11. Jones and Schuelka told Plaintiff that they had no information on her and asked her to complete a job application. Plaintiff completed an application. Arona's management informed Plaintiff that they would contact her about beginning work on February 18, 2008. Prior to Plaintiff's visit, Arona had not informed any CG Rentals employees whether they would be hired by Arona.

Arona had not received any other applications at this time.

Later that day, Plaintiff telephoned the Waterloo store and asked about her job application. Someone from the Waterloo store returned her call and informed her that she did not have a position with Arona and that the store was fully staffed. Arona claims that, when it decided to not hire Plaintiff, it was unaware of Plaintiff's length of service and work performance with CG Rentals. After Plaintiff learned that Arona did not have a position for her, she responded by telling Jones that she "thought that it was bullshit that they took her job away from her." Arona's Statement of Material Facts at ¶ 30.

The day after Plaintiff learned that she did not have a job with Arona, she obtained a medical release from her physician. The release indicated that Plaintiff was capable of returning to work immediately. Plaintiff apparently obtained this release for two reasons. First, she obtained it in order to apply for and collect unemployment benefits, because in order to be eligible for unemployment benefits, a worker must be ready, willing and able to work. Second, she obtained the medical release because an attorney advised her that she needed to provide the release to Arona to prompt them to give her a job and avoid a lawsuit.

On January 30, 2008, Plaintiff submitted the medical release to Arona. The next day, on January 31, 2008, Plaintiff returned to the Waterloo store. Arona contends that Plaintiff "yelled and screamed [ . . . ], acted upset and belligerent, and used profanity." Id. at ¶ 32. Plaintiff admits that she was upset and that she may have used profanity; however, she does not recall yelling or acting belligerent. That same day, the CG Rentals employees who were presently working at the Water-

loo store completed the paperwork necessary to become Arona employees.

In her deposition, Plaintiff agreed that Arona did not cause her to lose her job. Plaintiff also testified that, "[i]n the middle of all the confusion of everything going on, [she] got lost in the middle." Plaintiff's Appendix ("Pl. App'x") (docket no. 16–4), at 20A. Plaintiff also testified that she was upset about her inability to return to her job.

### G. Administrative Proceedings

On March 21, 2008, Plaintiff completed a complaint form against Arona for the Iowa Civil Rights Commission ("ICRC"). In her ICRC complaint, Plaintiff only identified "termination" as the discriminatory action taken by Arona against her. Arona's Statement of Material Facts at ¶ 52. Plaintiff did not select the check-box on the ICRC form that identified "failure to hire" as a basis of discrimination. In the summary portion of the ICRC form, Plaintiff wrote:

> I went in to [the Waterloo store] on January 28th, 2008 to inform new management that I would be returning to work [February] 18, 2008 from my maternity leave. During that time [I] was told that [Arona] had no information on me [and] that I would have to fill out a new application for my file, and told that they would let me know if my return date would work [and] that they would call me that day.
>
> [At] 7:15 p.m. [I] received a call from Brian Jones[,] the Regional Manager[,] saying that there were no positions for me to return to [and] that my job was filled while I was gone.

Arona App'x I at 126.

On August 27, 2008, Plaintiff amended her ICRC complaint and added CG Rentals as a party. Plaintiff also provided an additional narrative of the facts underlying her claim. In the additional narrative, Plaintiff alleged that Arona "failed to retain her and/or to rehire her on or about January 28, 2008." Arona's Statement of Material Facts at ¶ 55.

## VI. ANALYSIS

Both of Plaintiff's claims allege that Arona refused to hire Plaintiff because she had recently been pregnant. Arona argues that the court should dismiss Plaintiff's claims because: (1) she is not a member of a protected class; (2) Arona filled the CSR position before Plaintiff applied for it; (3) Plaintiff cannot show an inference of discrimination; (4) Arona had legitimate, non-discriminatory reasons to not hire Plaintiff; and (5) Plaintiff failed to exhaust her claims before filing the instant action.

First, the court examines the legal framework of pregnancy discrimination cases. Then, the court turns to consider the merits of the Motion.

### A. Pregnancy Discrimination: Legal Framework

The PDA amended Title VII of the Civil Rights Act of 1964 to define "because of sex" or "on the basis of sex" to include "because or on the basis of pregnancy, childbirth, or related medical conditions[,]" and to require that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes [ . . . ] as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). Similarly, the ICRA provides, in relevant part, that "[a] written or unwritten employment policy or practice which excludes from employment applicants or employees because of the employee's pregnancy is a prima facie violation of" the ICRA. Iowa Code § 216.6(2)(a).

■ Where, as in this case, a claim of pregnancy discrimination involves only indirect evidence of discrimination, the claim is subject to the burden-shifting framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Quick v. Wal–Mart Stores, Inc.,* 441 F.3d 606, 610 (8th Cir. 2006). Therefore, a plaintiff must establish a prima facie case of pregnancy discrimination; if she does so, the employer may advance a legitimate, non-discriminatory reason for adverse action against the plaintiff; and if the employer does so, the burden then returns to the plaintiff to show that the employer's reason is a pretext for pregnancy discrimination. *Id.* The Iowa Supreme Court has embraced this burden-shifting analysis for pregnancy discrimination claims under the ICRA. *See DeBoom v. Raining Rose, Inc.,* 772 N.W.2d 1, 6–7 (Iowa 2009) (applying *McDonnell Douglas* burden-shifting framework in an ICRA pregnancy discrimination case). The Iowa Supreme Court has stated that the "ICRA was modeled after Title VII of the United States Civil Rights Act" and "Iowa courts therefore traditionally turn to federal law for guidance in evaluating the ICRA," employing "the analytical framework utilized by the federal courts in assessing federal law," although federal law is not controlling. *Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999); *see also DeBoom,* 772 N.W.2d at 7 (applying law in federal PDA cases to pregnancy discrimination cases under the ICRA). Accordingly, the court applies the same analysis to both of Plaintiff's claims.

## B. Prima Facie Case

■ Arona argues that Plaintiff cannot establish a prima facie case of pregnancy discrimination. To establish a prima facie case of pregnancy discrimination, Plaintiff must show: "(1) [she] is a member of a protected class; (2)[she] was qualified for the position for which the employer was accepting applications; (3)[she] was denied the position; and (4) the employer hired someone from outside the protected class." *Arraleh v. County of Ramsey,* 461 F.3d 967, 975 (8th Cir.2006) (citing *Kobrin v. Univ. of Minn.,* 34 F.3d 698, 702 (8th Cir.1994)); *see also DeBoom,* 772 N.W.2d at 6 (citing same prima facie test). Arona argues that Plaintiff's prima facie case fails because: (1) she was not a member of a protected class at the time of the adverse employment action; (2) there was no CSR position available when Plaintiff applied to work for Arona; and (3) Plaintiff cannot show that Arona's failure to hire her occurred under circumstances that give rise to an inference of discrimination. Arona does not dispute that Plaintiff was qualified to work as a CSR.

### 1. Protected class

■ Arona reasons that, because Plaintiff was not pregnant and was not suffering from any pregnancy-related disability when she applied to work for Arona, she is not protected by the PDA. Arona construes the PDA too narrowly and fails to cite any case law that interprets the PDA to apply exclusively to women who are pregnant or suffer from a pregnancy-related disability. The PDA extends to women who are discriminated against "because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k). This protection extends beyond women who are pregnant or suffering from a pregnancy-related disability. *See, e.g., Kocak v. Cmty. Health Parners of Ohio,* 400 F.3d 466, 468 (6th Cir.2005) ("Whether one is or is not pregnant at the time does not control whether one can allege discrimination under the [PDA]"); *Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1214 (6th Cir.1996) (holding that an

employer violates the PDA if it terminates an employee because the employee is considering an abortion); *Hall v. Nalco Co.,* 534 F.3d 644, 649 (7th Cir.2008) (holding that employer's practice of terminating employees who took time off to undergo in vitro fertility treatment were protected by PDA because they were "terminated not for the gender-neutral condition of infertility, but rather for the gender-specific quality of childbearing capacity"); *Piraino v. Int'l Orientation Res., Inc.,* 84 F.3d 270, 274 (7th Cir.1996) (holding that complaint stated a claim for pregnancy discrimination even though adverse employment action occurred after the plaintiff had given birth, because the plaintiff alleged that, "upon learning of her pregnancy in September 1990, [the employer] set out to find a way to dismiss her").

■ Accordingly, the court finds that the PDA's protection is broader than Arona's position suggests and encompasses individuals who have been recently pregnant. Plaintiff alleges that Arona refused to hire her because she had recently been pregnant and gave birth. Therefore, Plaintiff is a member of a protected class under the PDA.

Arona argues that the court should construe Plaintiff's claim as a discrimination claim based on her status as a new parent rather than a claim based on her recent pregnancy. Arona contends that discrimination claims based on new parent status is not covered by the PDA. In support of its argument, Arona cites *Piantanida v. Wyman Ctr., Inc.,* 116 F.3d 340 (8th Cir. 1997). In *Piantanida,* the Eighth Circuit Court of Appeals determined whether, under the PDA, "being discriminated against because of one's status as a new parent is 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" 116 F.3d at 342 (quoting 42 U.S.C.

§ 2000e(k)). The Eighth Circuit Court of Appeals held:

> In examining the terms of the PDA, we conclude that an individual's choice to care for a child is not a "medical condition" related to childbirth or pregnancy. Rather, it is a social role chosen by all new parents who make the decision to raise a child. While the class of new parents of course includes women who give birth to children, it also includes women who become mothers through adoption rather than childbirth and men who become fathers through adoption or biology. An employer's discrimination against an employee who has accepted this parental role—reprehensible as it might be—is therefore not based on the gender-specific biological functions of pregnancy and child-bearing, but rather is based on a gender-neutral status potentially possessible by all employees, including men and women who will never be pregnant.

*Id.*

In the instant action, Plaintiff alleges that Arona failed to hire her because, at the time she applied, she had recently been pregnant and had recently given birth. Plaintiff's claim does not allege that Arona discriminated against her because she was a new parent. Accordingly, *Piantanida* does not apply.

In summary, the court concludes that Plaintiff is a member of the protected class under the PDA. Accordingly, the court shall deny the Motion to the extent it relates to this argument.

### 2. Availability of CSR position

■ Next, Arona argues that Plaintiff's prima facie claim fails because Arona had no open CSR position at the time Plaintiff applied to work at the Waterloo store. *See Arraleh,* 461 F.3d at 975 (stating that prima facie PDA claim requires a plaintiff

to show that "[she] was qualified for the position for which the employer was accepting applications"). More specifically, Arona argues that Jones had decided to hire Gudino before Plaintiff submitted her application for the CSR position. The lack of an open position is one of the "most common legitimate reasons for [a] failure to hire[.]" *Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 469 (8th Cir.1984) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n. 4, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)); *see also Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150 (D.C.Cir.2004) ("*McDonnell Douglas* principally demands that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.") (internal quotation marks omitted).

There is a disputed issue of material fact over this issue. It is unclear whether Arona learned that Plaintiff was on pregnancy leave before it decided to hire Gudino. Arona argues: "Shortly after Arona made its initial hiring decisions in mid-January [of] 2008, CG Rentals informed [Connelly] that Plaintiff was a CSR on maternity leave through mid-February." Reply at 3 (citing Arona App'x II at 143). However, the deposition transcript that Arona cites in support of this argument does not support Arona's position. In the deposition transcript cited by Arona, Connelly merely testifies that he learned about Plaintiff's status on pregnancy leave around the same time that he received the faxed list from CG Rentals. Connelly does not testify that Arona had decided who it would hire before it learned about Plaintiff.

Additionally, Arona takes inconsistent positions with respect to the date on which it learned that Plaintiff was on pregnancy leave. Connelly testified that he learned about Plaintiff's status on pregnancy leave in "mid-January." *Id.* at 143. However, Arona admits that, when Plaintiff visited the Waterloo store on January 28, 2008, Jones told her that Arona management had just learned about her the previous Friday; that is, on January 25, 2008. Jones takes an additional inconsistent position: he claims that he was "totally unaware of her [ . . . ] until she came in" to the Waterloo store on January 28, 2008. Arona App'x I (docket no. 16–4), at 53. All of these dates fall within the time frame in which Arona decided who to hire: "[i]n the last one or two weeks before the [Sale], and after receiving the list of employees from [CG Rentals;]" that is, at some point between January 19 and January 31, 2008. Arona App'x I, at 98.

■ The date on which Arona learned about Plaintiff's status as an employee on pregnancy leave is highly relevant to the instant analysis. If Arona learned about Plaintiff's status before it decided to hire Gudino, then its primary argument related to the availability of the CSR position— that it simply chose to hire Gudino because it was unaware of any other CSR in the Waterloo store—fails. Plaintiff has presented evidence that, if believed, would support a finding that a CSR position was available and that she was not considered for it because she was on leave due to her recent pregnancy. When viewing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff has presented sufficient evidence to show that Arona management knew about her status on pregnancy leave before they decided to hire Gudino and never considered her for that position because she was on pregnancy leave.

### 3. Inference of discrimination

Arona argues that Plaintiff cannot satisfy her prima facie case because she presents no evidence giving rise to an inference of discrimination. *Arraleh*, 461 F.3d at 975 (2006). To establish an inference of discrimination, Plaintiff must show that Arona treated similarly-situated persons outside the protected class more favorably than her. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936 (8th Cir.2006). However, "[w]hile an employer must treat its employees similarly, it does not have to treat employees in a protected class *more favorably* than other employees." *In re Union Pac. R.R. Employment Practices Litig.*, 479 F.3d 936, 944 (8th Cir.2007) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (emphasis added).

■ Plaintiff has established an inference of discrimination. Plaintiff, who was on pregnancy leave, applied for a CSR position that Arona gave to Gudino, a woman who was not a member of the protected class under the PDA. Arona argues that the fact Gudino had a child weighs against a finding of an inference of discrimination. However, the fact that Gudino was a parent is irrelevant to this portion of the analysis. What matters is that, at the time Plaintiff applied for the CSR position with Arona, Gudino was not pregnant, recently pregnant or subject to any pregnancy-related condition. Arona also argues: "To the extent [Plaintiff] argues Arona discriminated against her because she is a woman who had been pregnant and might become pregnant again, her claims fails." Brief in Support of Motion (docket no. 16–1), at 7. Arona reasons that, when it "decided to hire Gudino instead of [Plaintiff,] both wom[e]n were of a similar age, in their child-bearing years, and each had at least one child already." *Id.* This argument is a red herring. Plaintiff claims that Arona discriminated against her because she had recently been pregnant and was on pregnancy leave. Plaintiff's claim is not based on her status as a parent.

Arona also argues that, when it decided to hire Gudino, it "knew that she belonged to *two* protected classes: Gudino was Hispanic and had a physical disability that was later diagnosed as lupus." *Id.* This argument misses the point. The question is whether Gudino was a member of the same protected class as Plaintiff—not whether she was a member of *any* protected class under Title VII. *See Gilooly v. Miss. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739–40 (8th Cir.2005) (stating that, to show an inference of discrimination, a plaintiff may present evidence that " 'similarly situated employees, *who were not members of the protected group*, were treated differently' ") (citing *Jacob–Mua v. Veneman*, 289 F.3d 517, 521–22 (8th Cir. 2002)) (emphasis in added).

Arona also argues that, because it had no affirmative duty to seek out Plaintiff to offer her the CSR position, Plaintiff cannot establish that she was treated less favorably than non-protected employees. This argument treats the facts superficially. Arona's hiring decisions were made and executed informally. Consequently, it is unclear whether or how Arona decided to hire Gudino instead of Plaintiff. The court agrees that Arona had no duty to offer employment to Plaintiff and recognizes the importance of following staffing guidelines to eliminate one of the CSR positions. The court also notes, however, that Arona had no duty to offer employment to Gudino. As previously stated, if the court construes the facts in the light most favorable to Plaintiff, Arona may have known about Plaintiff's status on pregnancy leave when it decided to hire Gudino. When Plaintiff visited the Waterloo store to ask about

returning to work from her pregnancy leave, Arona indicated that it did not plan to "clean out" any CG Rentals employees. Plaintiff's Statement of Material Facts at ¶ 11. At that point, Arona knew that CG Rentals' employees included Plaintiff. Arona management asked Plaintiff to complete an application for the CSR position, but did not require any other employee, including Gudino, to complete an application. The same day that Plaintiff completed her application, Arona informed her that they did not plan to hire her. Three days later, Arona required the CG Rentals employees it ultimately hired, including Gudino, to complete certain employment paperwork. Clearly, there is a disputed issue of material fact over whether Arona had decided to hire Gudino at the time Plaintiff applied for the position.[2]

### 4. Summary

In summary, the court finds that Plaintiff has satisfied her prima facie case for pregnancy discrimination. Accordingly, the court shall deny the Motion to the extent it requests the court to dismiss Plaintiff's claims on this basis.

### C. Legitimate, Non–Discriminatory Reason to Not Hire Plaintiff

The court proceeds to determine the second issue under the *McDonnell Douglas* framework; that is, whether Arona had a legitimate, non-discriminatory reason to not hire Plaintiff. *Quick*, 441 F.3d at 610. The court is not required to critically examine the employer's proffered reason for adverse action, nor is the court supposed to evaluate the veracity of the proffered reason; rather, the court must only determine whether the employer has met its burden of production. *Groves v. Cost Planning & Mgmt. Int'l, Inc.*, 372 F.3d 1008, 1009 (8th Cir.2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Arona offers two reasons for its decision to not hire Gudino. First, Arona states that it filled the position before it became aware of Plaintiff and, consequently, at the time Plaintiff applied for a job at the Waterloo store, there were no vacant CSR positions. The court finds that Arona has set forth a legitimate, non-discriminatory basis to not hire Plaintiff. *See Craik*, 731 F.2d at 469 (stating that one of the most common legitimate reasons for a failure to hire is that there was no vacancy).

Second, Arona states that it hired Gudino because she was a more qualified employee than Plaintiff. Arona states that, at the time Plaintiff submitted her application, it "knew nothing of [Plaintiff]'s length of service or her performance for CG Rentals." Plaintiff's Br. at 9. Arona claims that the only facts it knew about Plaintiff was "that she responded with profanity to [Jones] on January 28, 2008, and that she had yelled and screamed, was upset and belligerent, and used profanity with Mark Connelly on January 31, 2008." *Id.* In contrast, Arona states that it knew more about Gudino. For example, Arona knew that Gudino was bilingual, which was helpful to Spanish-speaking clients. Also, by virtue of his presence at the CG Rentals store prior to the Sale, Jones had the opportunity to interact with and observe

---

2. Arona also argues that "[a] comparison of the hiring decisions Arona made with respect to the male and female employees" on the CG Rentals employee list "does not create an inference of discrimination." Brief in Support of Motion at 7. Because the court has found that Plaintiff established an inference of discrimination by demonstrating that Arona hired Gudino instead of her for the CSR position, the court need not address this argument.

Gudino's work for several days, and he had no problems with her. The court finds that choosing to hire a more qualified candidate outside the protected class is a legitimate, non-discriminatory reason under *McDonnell Douglas*. *See Wingate v. Gage County Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir.2008) (stating that the selection of a more qualified candidate can be a legitimate, nondiscriminatory reason for a failure to hire).

In conclusion, the court finds that Arona has met its burden to proffer a legitimate, non-discriminatory reason for not hiring Plaintiff. Accordingly, the court turns to consider whether these proffered reasons are pretextual.

### D. Pretext

" 'Pretext may be shown with evidence that the employer's reason for the [adverse action] has changed substantially over time.' " *Qamhiyah v. Iowa State Univ. of Science & Tech.*, 566 F.3d 733, 747 (8th Cir.2009) (citing *McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 863 (8th Cir.2009)). Also, "evidence of 'remarks of the employer that reflect a discriminatory attitude,' as well as 'comments which demonstrate discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions' " may constitute evidence that an employer's explanation for an adverse action is pretextual. *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1128 (8th Cir.2008) (quoting *EEOC v. Liberal R–II Sch. Dist.*, 314 F.3d 920, 923 (8th Cir.2002)). Pretext may also be shown when an employee treated similarly-situated employees outside the protected class in a disparate manner. *Hervey v. County of Koochiching*, 527 F.3d 711, 720 (8th Cir.2008) (citing *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir.2000)). With respect to PDA claims, the Eighth Circuit Court of Appeals has been " 'hesitant to

find pretext or discrimination on temporal proximity alone.' " *Quick*, 441 F.3d at 610 (quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir.2001)).

■ Based on the facts in the record, a reasonable factfinder could disbelieve Arona's proffered reasons for refusing to hire Plaintiff. There is a genuine issue of material fact with respect to Arona's first proffered explanation—that it had hired Gudino before Plaintiff submitted her application. As stated above, Plaintiff, who was on pregnancy leave, applied for a CSR position that Arona gave to Gudino, a woman who was not a member of the protected class under the PDA. Arona's hiring process was informal, and it is unclear when Arona decided to hire Gudino. A great weight of admissible evidence shows that, when Plaintiff visited the Waterloo store on January 28, 2008 and spoke with Jones, Jones was aware that Plaintiff was a full-time CG Rentals employee who was on pregnancy leave. During that conversation, Jones told Plaintiff that Arona did not intend to clean out CG Rentals's full-time employees and asked her to submit an application for employment. Hours later, Arona informed Plaintiff that the position for which she had applied was filled. However, at the time Plaintiff applied for the position, Arona had not offered Gudino the CSR position, nor had Gudino applied for it. Indeed, Gudino never submitted an application for the CSR position. Several days after Plaintiff submitted her application and was denied employment, Arona had Gudino complete paperwork necessary to become an Arona employee. In summary, it appears that there is a disputed issue of material fact about whether Jones refused to consider Plaintiff for the CSR position because he wanted to give the position to an employee who was not recently pregnant—not be-

cause he had already decided to hire Gudino.

It is possible that Plaintiff's claims would fail at trial because a factfinder might believe that, at the time Plaintiff submitted her application for employment, Jones had decided to hire Gudino; however, "[a]t this stage in the case, the question is not whether [Plaintiff] will prevail on her claim but rather whether she has offered sufficient evidence from which a reasonable factfinder could find that she was discriminated against because [she was recently pregnant]." *Lewis v. Heartland Inns of Am., LLC*, 591 F.3d 1033, 1042 (8th Cir.2010). The court finds that Plaintiff has presented evidence showing that Arona's first proffered reason for not hiring Plaintiff is pretextual.

Plaintiff has also presented compelling evidence that suggests Arona's second proffered reason for not hiring Plaintiff, that Gudino was a more qualified employee, is pretextual. "Pretext may be shown with evidence that the employer's reason for the [adverse action] has changed substantially over time." *Qamhiyah*, 566 F.3d at 747. On January 28, 2008, Arona informed Plaintiff that it did not intend to hire her because it had no CSR position available and would not consider her for the position. Arona also makes this argument in its summary judgment brief. Now, Arona also argues that it chose to hire Gudino *instead of* Plaintiff because Gudino was more qualified. These explanations appear to be mutually exclusive. It is unclear how an employer could weigh the qualifications of two candidates for a position that does not exist. Stated another way, either Arona: (1) did not consider Plaintiff for the position because it had been filled, defeating the need for any comparison of the candidates, as it initially told Plaintiff; or (2) as it now argues, Arona chose to hire Gudino instead of Plaintiff. Because Arona's explanation for not hiring Plaintiff has changed substantially over time, the court finds that Plaintiff has shown that Arona's second proffered reason for not hiring Plaintiff is pretextual.

Additionally, Arona sets forth a variety of arguments that it believes would defeat or moot any showing of pretext: (1) Plaintiff was employed by CG Rentals, not Arona, when she was on pregnancy leave; (2) Plaintiff has failed to present evidence of "any statement or conduct by Arona representatives suggesting a pregnancy bias"; (3) Connelly and Jones had previously hired pregnant employees; (4) Arona is not responsible for CG Rentals' omission of Plaintiff's name from the list of employees CG Rentals faxed to Connelly; and (5) Arona's reliance on the list provided by CG Rentals is not evidence of pregnancy bias. The court has considered all of these arguments. The court finds that, even if they are true, they do not defeat Plaintiff's pretext arguments when the court views the facts in the record in their totality and in the light most favorable to Plaintiff. First, the fact that CG Rentals employed Plaintiff is not inconsistent with the fact that Arona failed to hire her due to her pregnancy. Second, a statement of pregnancy bias is not necessary to survive a motion for summary judgment. As stated above, Plaintiff has presented evidence that Arona's proffered legitimate, non-discriminatory reasons for its failure to hire may be pretextual. Third, the fact that Jones and Connelly may have previously hired pregnant employees is helpful to their case; however, it does not impact the fact that Plaintiff has demonstrated that Arona's proffered reasons for not hiring her may be pretextual. Fourth, the court agrees that Plaintiff's omission from the employee list CG Rentals faxed to Connelly is not Arona's fault; however, Plaintiff's claim is not based on her omission from that list.

Rather, it is grounded in Arona's failure to hire after it learned that she was a full-time employee on pregnancy leave.

The court recognizes that the instant case is a close one, particularly in light of the fact that Plaintiff's evidence of discrimination is entirely circumstantial. However, " '[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.' " *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 901 (8th Cir.2009) (citing *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994)). As a result, the Eighth Circuit Court of Appeals has consistently held that "summary judgment should be used sparingly in employment cases" and is only "appropriate where there are no disputed facts and only one conclusion is possible." *Woods v. Perry*, 375 F.3d 671, 674 (8th Cir.2004) (citing *Crawford*, 37 F.3d at 1341). In the instant action, there are disputed issues of material fact about when Jones chose to hire Gudino. Accordingly, there is more than one conclusion possible on the ultimate issue of whether Arona failed to hire Plaintiff because Jones knew she had been on pregnancy leave. Therefore, summary judgment is not appropriate.

### E. Exhaustion

Arona argues that the court should dismiss Plaintiff's claims because she failed to exhaust her administrative remedies before she filed the instant action. " 'In Title VII, Congress set up an elaborate administrative procedure [ . . . ] that is designed to assist in the investigation of claims of discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation.' " *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir.2004) (quoting *Patterson v. Mc-*

*Lean Credit Union*, 491 U.S. 164, 180–81, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)) (alterations omitted). Title VII requires claimants to timely file a discrimination charge before he or she may bring a Title VII action in court. *Duncan*, 371 F.3d at 1024 (citing 42 U.S.C. § 2000e–5(e)(1)). The same requirements apply with respect to claims under ICRA. *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005). Arona argues that Plaintiff did not exhaust her administrative remedies because her claim for unlawful failure to hire does not appear in her administrative complaint. Despite the administrative form having a separate check box for "failure to hire," Plaintiff failed to specifically state that her claim against Arona was due to its "failure to hire" her. Motion Br. at 13. Instead, Plaintiff identified "terminated" as the only discriminatory action and explained that she was "terminated while on medical leave from having a baby." *Id.* Arona argues that, because Plaintiff failed to articulate her claim for failure to hire in the administrative complaint, her claims should be dismissed.

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' " *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). " 'The proper exhaustion of administrative remedies gives the plaintiff a green light to bring his or her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court.' " *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir.2005) (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996)). "Although [the Eighth Circuit Court of Appeals] ha[s] often stated that

[it] will liberally construe an administrative charge for exhaustion of remedies purposes, [it] also recognize[s] that 'there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made.' " *Id.* (quoting *Shannon,* 72 F.3d at 684). "The claims of employment discrimination in the complaint may be as broad as the scope of the [administrative agency's] investigation which reasonably could be expected to result from the administrative charge." *Id.* (quoting *Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827, 836 (8th Cir.2000)). " 'Although an [administrative agency] complaint need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.' " *Humphries v. Pulaski County Special Sch. Dist.,* 580 F.3d 688, 697 (8th Cir. 2009) (quoting *Fair v. Norris,* 480 F.3d 865, 867 n. 2 (8th Cir.2007)).

 After carefully reviewing Plaintiff's administrative complaint in light of the liberal rules of construction, the court finds that Plaintiff properly exhausted her failure to hire claim against Arona. The court acknowledges that the administrative complaint does not specifically call the adverse discriminatory action a "failure to hire." However, when read in its entirety, the administrative complaint clearly gave Arona notice of the subject matter of Plaintiff's claim. In so finding, the court notes the summary of allegations, in which Plaintiff writes:

I went in to [the Waterloo store] on January 28th, 2008 to inform new management that I would be returning to work [February] 18, 2008 from my maternity leave. During that time [I] was told that [Arona] had no information on me [and] that I would have to fill out a new application for my file, and told that they would let me know if my return date would work [and] that they would call me that day.

[At] 7:15 p.m. [I] received a call from Brian Jones[,] the Regional Manager[,] saying that there were no positions for me to return to [and] that my job was filled while I was gone.

In this summary, Plaintiff identified a number of factors that gave Arona ample notice of the nature of and circumstances underlying her claim. First, Plaintiff identified the date of the adverse action, i.e., the failure to hire, as January 28, 2008. This is the date that Plaintiff visited the Waterloo store, spoke with Jones about working after her pregnancy leave and applied for and was rejected for employment as a CSR. In other words, this was the date on which Plaintiff alleges her claim accrued. Second, Plaintiff identifies "new management" as the actor or actors who caused the adverse action. Clearly, "new management" refers to the Arona management that was working in the Waterloo store before the Sale. Third, Plaintiff identifies her pregnancy and recently-pregnant condition as the basis for her claim. Fourth, Plaintiff described the application procedure and her conversation. Fifth, Plaintiff describes her telephone conversation with Jones during which he informed her that Arona had filled her position. Plaintiff has fully exhausted the administrative process. Accordingly, the court shall deny the Motion to the extent it asks the court to dismiss Plaintiff's claims on this basis.

### VII. CONCLUSION

In light of the foregoing, the Motion (docket no. 16) is **DENIED.**

**IT IS SO ORDERED.**